Riley v. Day.

---

G. W. RILEY, *Appellee,* v. ALLIE G. DAY, *Appellee,* and GERTIE MCCAFFREY, *Appellant.*

No. 17,887.

SYLLABUS BY THE COURT.

1. MINORS—*Adopted Child—Rights of Inheritance.* Under the adoption act a child legally adopted takes the name of the adopting parent and is given the same personal rights and is entitled to the same rights of inheritance as a natural child.

2. ———— *Same.* The amendment of 1891 of the act concerning descents and distributions (Gen. Stat. 1909, § 2952) did not repeal or limit the rights conferred on an adopted child by the adoption act and to which he was entitled prior to the amendment mentioned.

3. ———— *Same.* The words "living issue" as used in the amendment were employed by the legislature in the sense of living children, and hence an adopted child of a prior deceased daughter of an intestate does inherit a portion of the estate of such intestate through her adopting mother.

Appeal from Stafford district court. Opinion filed January 11, 1913. Reversed.

*C. M. Williams,* of Hutchinson, and *T. W. Moseley,* of St. John, for the appellant.

*Robert Garvin,* of Stafford, for appellee Allie G. Day.

The opinion of the court was delivered by

JOHNSTON, C. J.: G. W. Riley and his wife, Drucilla K. Riley, had two children named Haida Clothier and Allie G. Day. Haida Clothier adopted a child named Gertie McCaffrey. In 1907 Haida Clothier died intestate and left surviving her parents, her sister and the adopted daughter. Later Drucilla K. Riley, who owned a tract of land, died intestate leaving as her survivors her husband, G. W. Riley, her daughter, Allie G. Day, and the granddaughter, Gertie. G. W. Riley and Allie G. Day each claimed one-half of the real estate mentioned, while Gertie claimed the share that her foster mother, Haida Clothier, would have inherited if she had survived the decedent, Mrs. Riley.

These were the respective claims of the parties in a proceeding brought to determine the ownership of the decedent's land. The question then is, Will the property of Mrs. Riley descend to the adopted child of her deceased daughter? The validity of the adoption of Gertie is not questioned, and there is no doubt that she does inherit from her adopting mother, but the contention is that she does not inherit the property of the parent of the adopting mother. After prescribing the steps necessary to the adoption of a minor child the statute declares that the person adopting the minor is entitled to exercise all the rights of a parent and is subject to all the liabilities of that relation, and as to the status and rights of the adopted child it provides that:

"Minor children adopted as aforesaid shall assume the surname of the person by whom they are adopted, and shall be entitled to the same rights of person and property as children or heirs-at-law of the person thus adopting them." (Gen. Stat. 1909, § 5066.)

According to this provision, which has been in force since 1868, the minor so adopted is not only given the position of a child, but is placed on an equality with the other children and heirs of the adopting parent as to all personal and property rights. It is claimed, however, that a provision of the act concerning descents and distributions limits the rank and rights thus conferred on an adopted child. After defining the rights and portions of a widow in the estate of her deceased husband, and of the surviving husband in the estate of the deceased wife, it is provided that:

"Subject to the rights and charges hereinbefore contemplated, the remaining estate of which the decedent died seized shall, in the absence of other arrangements by will, descend in equal shares to his children surviving him, and the living issue, if any, of prior deceased children; but such issue shall collectively inherit only that share to which their parent would have been entitled had he been living." (Gen. Stat. 1909, § 2952.)

This is an amendment of two sections of that act which had been in force unchanged from the enactment of the act in 1868 until the amendment of 1891. The sections amended read:

"Subject to the rights and charges hereinbefore contemplated, the remaining estate of which the decedent died seized shall, in the absence of other arrangements by will, descend in equal shares to his children.
"If any one of his children be dead, the heirs of such child shall inherit his share, in accordance with the rules herein prescribed, in the same manner as though such child had outlived his parent." (Gen. Stat. 1889, §§ 2609, 2610.)

All agree that under the law as it existed prior to the amendment an adopted child took all the rights of a natural child, and if it had remained unchanged Gertie would have inherited the share that would have descended to her adopting mother, Haida, if Haida had outlived her mother, Mrs. Riley. It is contended that the legislature, by the use of the words "living

issue" in the amendment, intended to make a distinction between adopted and natural children, and that only natural children of a deceased parent should inherit from the ancestors of that parent. In the amendment no reference is made to the adoption statute which gives the adopted child the status and rights of a child by blood, and there is nothing in the amendment except the words "living issue" which looks towards limiting or repealing the adoption act. It has been said that the adoption act, which is of recent origin, "is founded upon a wise and beneficent purpose, which should be sustained and promoted by giving the law a liberal construction." (*Boaz v. Swinney*, 79 Kan. 332, 334, 99 Pac. 621.)

It is hardly conceivable that the legislature intended to abrogate the provisions of the adoption act, or to cut out the rights expressly conferred upon adopted children by that act, in such an indirect, blind way. In fact the words "living issue" are frequently used interchangeably with "living children," a phrase which fairly includes adopted children. It is true that in its strictest sense the word "issue" applies to those who are of the blood, but in common parlance the meaning of the word is children, but when the term is used in legal documents its *prima facie* meaning is descendants. (Webster's New International Dictionary; 23 Cyc. 359.)

In the act concerning the construction of statutes it is provided that "the word 'issue,' as applied to the descent of estates, includes all the lawful lineal descendants of the ancestor." (Gen. Stat. 1909, § 9037, subdiv. 7.)

But the term "descendants" is sometimes used synonymously with "children" (*Schmaunz v. Göss*, 132 Mass. 141), and lineal descendants has been held to include adopted children (*Warren v. Prescott*, 84 Maine, 483, 24 Atl. 948, 17 L. R. A. 435). It does not appear that the word is used in its strictest sense in other sec-

tions of the statute concerning descents and distributions. In the section following the one under consideration the word means child or children. It is there provided that:

· "If the intestate leave no issue, the whole of his estate shall go to his wife; and if he leave no wife nor issue, the whole of his estate shall go to his parents." (Gen. Stat. 1909, § 2953.)

This provision has stood unchanged since the act was passed, and yet it would hardly be claimed that if an intestate left an adopted child that the whole of the estate would go to the widow. It has been the generally accepted interpretation of this provision that issue is used as the equivalent of children, and that an adopted child of an intestate would share in the estate with the widow, and that if no wife was left a surviving adopted child would take the estate rather than the parents of the intestate.

Authorities are cited wherein the word "issue" is given a stricter and narrow meaning which excludes adopted children. (*Phillips, Exr., v. McConica, Guardian*, 59 Ohio St. 1, 51 N. E. 445, 69 Am. St. Rep. 753; *Van Derlyn v. Mack*, 137 Mich. 146, 100 N. W. 278; · *Wallace v. Noland*, 246 Ill. 535, 92 N. E. 956; *Hockaday v. Lynn*, 200 Mo. 456, 98 S. W. 585; *Burnett's Estate*, 219 Pa. St. 599, 69 Atl. 74.)

The word is used in different senses in the various statutes, and its interpretation depends largely on the connection in which it appears and the sense in which it is used in the same act or in others on related subjects. A case somewhat like this one was decided in Massachusetts. There a statute provided that an adopted child should inherit as if born in lawful wedlock. In a statute of descents, which was enacted after the adoption statute was passed, it was provided that when a husband dies intestate and "leaves no issue living" the widow shall receive a certain share. It was there contended that by the use of the words "issue

living" in the later statute, it was intended and had the effect to exclude adopted children. The court held, however, that the adopted child is "issue" within the meaning of that statute, and saying that if the statute was given a stricter meaning it would operate to repeal, *pro tanto,* the adoption act wherein the adopted child had been placed on an equality with a natural child. It was also said that as an adopted child was expressly given the status of a natural child it was not supposable that the legislature intended, by the use of the term quoted, to take from an adopted child the rights so explicitly given, and that therefore the words "issue living" should be construed in the sense of child or children, and when so treated the term fairly included adopted children. (*Buckley v. Frasier,* 153 Mass. 525, 27 N. E. 768.)

Other authorities in which the word was held to include adopted children are: *In re Newman,* 75 Cal. 213, 16 Pac. 887; *Estate of Wardell,* 57 Cal. 484; *Ross v. Ross,* 129 Mass. 243, 37 Am. Rep. 321; *Warren v. Prescott,* 84 Maine, 483, 24 Atl. 948, 17 L. R. A. 435; *Shick v. Howe,* 137 Iowa, 249, 114 N. W. 916; *Virgin v. Marwick,* 97 Maine, 578, 55 Atl. 520; *Rowan's Estate,* 6 Pa. Co. Ct. Rep. 461.

We think that the legislature did not intend to repeal the provisions of the adoption act which fixed the status of an adopted child and gave it the inheritable rights of a natural born child, and also that the words "living issue" in section 2952 of the General Statutes of 1909 were used in the sense of living children. It is said that this interpretation, if adopted, will leave the amendment of 1891 without effect and operate to reinstate the statute as it existed before the amendment. The appellee inquires, what possible purpose could the legislature have had except to restrict the descent of property to the natural children of any prior deceased child of an intestate? There are good reasons to infer that the amendment was enacted to cut out the

right of the husband or wife of the intestate and of the deceased child to inherit a share of the estate of the ancestors of such child. After *Delashmutt v. Parrent,* 40 Kan. 641, 20 Pac. 504, was decided there was some surprise at the interpretation there given to the word "heirs" under which the surviving husband or wife of an intestate could take the share that a prior deceased child would have taken if he had outlived his parent. An agitation was at once started for the enactment of a measure that would give the remaining estate of an intestate to the surviving children, and to the living children of a prior deceased child, so as to cut out the right of the surviving husband or wife of the intestate to inherit the share of a deceased child, and also to exclude the husband or wife of such deceased child from inheriting any part of that share. At the succeeding legislature the amendment was made to meet this demand and which, as we have seen, gives the remaining estate of an intestate to his surviving children and the living children of a prior deceased child, instead of to the heirs of such child. This, we think, was the purpose of the amendment, rather than to nullify the principal provisions of the adoption act or to discriminate among the children of a deceased child of an intestate.

The judgment will, therefore, be reversed with the direction to enter judgment awarding to Gertie McCaffrey a one-fourth interest of the real estate involved in this proceeding.