No. 22,233.

J. H. DREYER, *Appellee,* v. GLADYS SCHRICK (formerly GLADYS MOORE), a Minor, *Appellant,* JAMES A. MCCLURE, as Administrator of the Estate of JOSEPH BEYER, Deceased, *Appellee.*

### SYLLABUS BY THE COURT.

1. MINOR — *Adopted by Testator — Revokes Previously Executed Will.* Adoption of a child by a testator revokes his previously executed will to the same extent as birth of a child.

2. SAME—*Second Adoption—Child Inherits from First Foster Parent.* A child by adoption, who is adopted the second time, inherits from his first foster parent.

Appeal from Shawnee district court, division No. 2; GEORGE H. WHITCOMB, judge. Opinion filed November 8, 1919. Reversed.

*H. T. Phinney,* of Oskaloosa, and *Oscar Raines,* of Topeka, for the appellant.

*D. H. Branaman,* of Topeka, for appellee J. H. Dreyer.

*Lee Monroe,* and *C. M. Monroe,* both of Topeka, for appellee James A. McClure, administrator.

The opinion of the court was delivered by

BURCH, J.: The action was commenced as one to quiet title to real estate derived through the will of Theresa Beyer, deceased. The issues were broadened to include conflicting claims to personal estate left by Joseph Beyer, her husband, whose death occurred subsequently to that of his wife. The defendant, Gladys Schrick, asserted an interest in all the property involved, by virtue of her adoption by the Beyers. The adoption occurred after the execution of Theresa Beyer's will, in which the defendant was not provided for. After adoption by the Beyers, and while they were living, the defendant, who is still a minor, was legally and formally adopted by Charles and Mary Schrick, her present foster parents.

The question presented is one of statutory interpretation. The statute relating to adoption of minor children contains the following sections:

"Any person may appear in the probate court of the county of his or her residence and offer to adopt any minor child or children as his or her own. Thereupon the court shall investigate the matter, and shall require that the minor appear or be brought before the court, and shall require that such of the minor's parents as are living in the state, and the guardian (if any) appear also in court, . . . and if the probate court shall find that the minor and the living parents of such minor and the guardian (if any) consent freely and voluntarily to such adoption, the said court shall record its proceedings in the journal, declaring each such minor child to be the child and heir of such person so adopting such minor; and then and thereafter such person so adopting such minor shall be entitled to exercise any and all the rights of a parent, and be subject to all the liabilities of that relation. . . .

"Minor children adopted as aforesaid shall assume the surname of the person by whom they are adopted, and shall be entitled to the same rights of person and property as children or heirs-at-law of the person thus adopting them." (Gen. Stat. 1915, §§ 6362, 6363.)

The statute of wills contains the following section:

"When a testator at the time of executing his will shall have a child absent and reported to be dead, or having a child at the time of executing the will shall afterwards have a child who is not provided for in the will, the absent child or the child born after the execution of the will shall take the same share of the estate, both real and personal, that it would have been entitled to if the testator had died intestate, toward raising which portion the devisees and legatees shall equally contribute in proportion to the value of what they shall respectively receive under the will, unless in consequence of a specific devise or bequest, or of some other provision in the will, a different apportionment among the devisees and legatees shall be found necessary, in order to give effect to the intention of the testator as to that part of estate which shall pass by the will." (Gen. Stat. 1915, § 11795.)

The statute of descents and distributions contains the following section:

"Subject to the rights and charges hereinbefore contemplated, the remaining estate of which the decedent died seized shall, in the absence of other arrangements by will, descend in equal shares to his children surviving him, and the living issue, if any, of prior deceased children; but such issue shall collectively inherit only that share to which their parent would have been entitled had he been living." (Gen. Stat. 1915, § 3841.)

With respect to the claim of the adopted child to a share of the property derived by will, the argument on one side may be briefly summarized as follows: The statute of wills covers the subject of the revocation of wills. The section quoted treats of the subsequent appearance of prospective heirs not pro-

vided for in a will, and makes revocation a consequence of the appearance of children, and of children of two classes only— those absent and reported dead, and those born. Gladys was not in fact the child of the Beyers, whatever her legal relation to them may have been. That relation was created by statute and judgment of the probate court. She was not born to them, and consequently she cannot qualify under the provision in favor of after-born children. To permit her to do so would require an amendment of the statute, which the legislature has not seen fit to make. This icily logical argument, based on the letter of the law, which killeth, is supported by judicial decisions from several states: *Russell v. Russell,* 84 Ala. 48; *Davis v. Fogle et al.,* 124 Ind. 41; *In re Gregory's Estate,* 37 N. Y. Supp. 925; *Goldstein v. Hammell,* 236 Pa. 305; *Evans v. Evans,* (Tex. Civ. App.) 186 S. W. 815.

Statutory peculiarities may account, in part, for some of these decisions. In Alabama a man may make a child capable of inheriting from him by executing and acknowledging a declaration to that effect and filing it with the probate court. The statute seems to recognize a clear difference between the status or relation of parent and child and the right of inheritance, and does not, considered alone, attach to adoption all the legal incidents and consequences of the natural relation. In the case cited from that state the court said:

"The word 'inheriting' is twice employed in our statute, and, it would seem, was placed there *ex industria.* The legislature did not deem it necessary to make any provision in case a will was made; for in such case, the testator usually directs in what manner his property shall go after his death. A will, unless it contravenes some provision of positive law, or some principle of public policy, is the law of the succession." (*Russell v. Russell,* 84 Ala. 48, 51.)

In Indiana the statute of wills made provision for after-born legitimate issue. It contained the further provision that no will should be revoked except as provided for in the act, unless the testator should destroy or mutilate the will with intent to revoke, or make a new will. In the case cited from that state the court said:

"It is held in *Runkle v. Gates,* 11 Ind. 95, that to revoke a will the requirements of the statute must be strictly pursued. It is manifestly true no act, thing, or deed will revoke a will once duly executed, unless

it comes within the provisions of the statute providing for the revocation of wills. To hold that the adoption of a child revokes the will, it is necessary to interpolate into section 2560, after the words 'legitimate issue,' the words 'or shall adopt a child'; or words to the same effect, for the words of the statute are plain and explicit; they are: 'If after the making of the will the testator shall have born to him legitimate issue.' It would be legislation, and enacting a statute to so construe it." (*Davis v. Fogle et al.*, 124 Ind. 41, 45.)

In Pennsylvania after-born children were provided for by an act of the year 1833. At that time there was no adoption statute, and adoption was unknown to the common law. The court held that the rights of a child and heir conferred on an adopted child by the later adoption statute did not have the effect to put such a child in all respects in the relation of a child in fact.

In Texas a "legal heir" may be "adopted" by a method similar to that recognized in Alabama. If, however, at the time of such adoption, or afterward, the adopting person have a child begotten in lawful wedlock, the adopted heir can take no more than one-fourth of the estate. In the case cited the court said:

"An adopted heir, upon the death of the adopting party, becomes entitled, if living, to an interest in all the property of which he may die intestate. . . . J. W. Evans having left a will at the time of his death, he did not die intestate, unless his act of adopting Jack Evans, under the statute, subsequent to the execution of the will, had the effect to revoke it. These statutes provide that an 'after-born' child shall have the effect to revoke the previously executed will, and in no way suggest that the adoption of a child or heir after the execution of a will shall have the effect to revoke it." (*Evans v. Evans*, 186 S. W. 815, 816.)

The New York decision was rendered by the surrogate's court of Otsego county.

In this state adoption carries with it every feature of the domestic relation of parent and child, except natural parentage. Capacity to inherit follows as an incident, but not as the sole end. Nurture is an end, ordinarily of more importance than property, and the journal of the probate court must declare the minor to be "the child" of the person adopting it, as well as heir. The reciprocal rights, duties, privileges, responsibilities and liabilities created are those of parent and child in fact, and statutes referring to the relationship, which do not clearly exclude adopted children, must be interpreted as including them

on equal footing with natural children. When the court had under consideration the section of the statute of descents and distributions quoted above (Gen. Stat. 1915, § 3841), it held that the expression "living issue" meant living children, and included an adopted child (*Riley v. Day*, 88 Kan. 503, 129 Pac. 524). In that case the court declined to follow the decisions of other courts excluding adopted children from the advantages of beneficial statutes by giving a strict and literal meaning to words, and adhered to the method of interpretation which had been approved in the case of *Boaz v. Swinney*, 79 Kan. 332, 99 Pac. 621:

"While the law of adoption is of comparatively recent origin, it is founded upon a wise and beneficent purpose, which should be sustained and promoted by giving the law a liberal construction." (p. 334.)

The legal status of the defendant after her adoption by the Beyers being the same as if she were their child in blood and by birth, the effect of her adoption on her foster mother's will previously executed may now be considered.

Unlike the Indiana statute, the statute of wills of this state does not, in terms, limit the methods by which a will may be revoked. It merely enumerates certain things which accomplish that result in whole or in part. This fact, however, is not deemed of importance, since the enumeration may be regarded as exhausting the methods which the legislature recognized. Furthermore, it is not deemed important whether or not the effect on a will of the circumstances referred to in the section of the statute quoted above (Gen. Stat. 1915, § 11795), constitute revocation in the strict sense. Revocation is a convenient term, fairly descriptive of what occurs. The question is whether or not subsequent adoption of a child is the legal equivalent of subsequent birth of a child.

An examination of the statute of wills reveals no disposition on the part of the legislature to make an intentional discrimination against adopted children. On the other hand, it is quite clear that what the legislature had in mind was the coming into consideration of a new heir, who was not regarded in making the will, whereby the testator's condition and circumstances were so changed that, presumptively, he would not desire the will to stand. This fact, the fact that the testator becomes parent of a child capable of inheriting a share of his

estate, but who was not in existence and was not provided for when the will was made, fully accounts for the legislation. The uncontemplated springing into existence of the relation of parent and child was the important thing. It absorbed the legislative thought, and induced use of words commonly expressive of the fact. But distinction between origins of the relation was not in mind, and any lawfully recognized origin satisfies the condition of the statute. This conclusion agrees with that reached by the courts of some other states: *Flannigan v. Howard,* 200 Ill. 396; *Hilpire v. Claude,* 109 Iowa, 159; *Glascott v. Bragg and another,* 111 Wis. 605.

If it be true that the word "born" was not used *ex industria* —to appropriate the phrase of the Alabama court—and is no more restrictive than the loose expression "have a child," found in the same section, it requires no amendment of the statute to authorize the court to say that adoption of a child by a testator revokes his previously executed will to the same extent as birth of a child.

With respect to the claim of the defendant to a share of the estate left by her first foster father, it may be observed that there is no statute which prevents dual inheritance. While the adoption statute creates a new relation of parent and child and confers new capacity to inherit, it does not purport to cut off capacity to inherit already enjoyed. Without such a statute, the authorities seem to agree that an adopted child may inherit from both its natural and its adopted parent. (1 C. J. 1400.) No reason is advanced, or is apparent, for annihilation, by a second adoption, of the right to inherit, when the first adoption had no such effect, and it has been held that a second adoption is no more destructive of the right than the first. (*Patterson et al. v. Browning,* 146 Ind. 160, 163.)

The plaintiff refers to the rule that, when an order of adoption has been set aside, the status of the child is the same as if no adoption proceeding had taken place, and cites cases sustaining the rule. It has no application to the present controversy. In the case of *In re Klapp's Estate,* 197 Mich. 615, it was held that a second adoption has the effect of "revoking or superseding" the order made in the first adoption proceeding, and since right of custody, obligation to nurture, etc., consequent upon the first proceeding, fall, the right of heirship,

conferred by the same proceeding, falls. The defect in this reasoning is that, while a new domestic relation is created, the first proceeding is not affected in any particular by the second. The first proceeding stands for all time, in all its integrity, attended by the same legal consequences as birth of a child to the adopting parents, unless formally annulled on sufficient grounds, in a proper proceeding to that end. The law creates capacity to inherit, and not birth or adoption. The law invests those born and those adopted with that capacity, without distinction. Some other law must be found which destroys the capacity in one case and not in the other, or it persists, without regard to whether it originated with birth or with adoption. The adoption statute has no such effect, and no other statute exists which does.

The judgment of the district court is reversed, and the cause is remanded with direction to render judgment in favor of the defendant, Gladys Schrick.