No. 23,008.

*In re* THE ESTATE OF WILLIAM BARTRAM, Deceased (GEORGE
BARTRAM, *Appellant,* v. P. M. HOLCOMB, as Administrator,
etc., and as Guardian of THERON Q. BARTRAM, a Minor,
*Appellee*).

### SYLLABUS BY THE COURT.

DESCENTS AND DISTRIBUTIONS—*From Whom an Adopted Child May In-
herit.* A child who after the death of his mother is adopted by his
maternal grandfather, inherits from the grandfather on his death, as
his adopted child, and inherits as a child of the mother.

. Appeal from Shawnee district court, division No. 2; GEORGE
H. WHITCOMB, judge. Opinion filed May 7, 1921. Affirmed.

*J. J. Schenck,* of Topeka, for the appellant.

*Z. T. Hazen,* of Topeka, for the appellee.

The opinion of the court was delivered by

MARSHALL, J.: George Bartram appeals from an order di-
recting P. M. Holcomb, administrator of the estate of William
Bartram, to pay to the widow and children the funds of the
estate in a certain proportion.

William Bartram was married and had two children, George
Bartram, the appellant, and Mabel Thedrick. She died prior
to the death of William Bartram, and left one child, Theron
Q. Bartram, as her sole and only heir. After her death Wil-
liam Bartram adopted Theron Q. Bartram, and then died intes-
tate.

The probate court, and on appeal from that court, the dis-
trict court, directed the administrator to pay over to the widow
of William Bartram one-half of the estate, to George Bartram
one-sixth thereof, and to Theron Q. Bartram one-third thereof.
The effect of the judgment is to give to Theron Q. Bartram an
amount of the estate that would be equal to that inherited by
two children of William Bartram. The appeal is taken from
the order directing payment of one-third of the estate to
Theron Q. Bartram.

The only question discussed is, Can Theron Q. Bartram in-
herit from his grandfather as an adopted child and at the same

time as the sole surviving heir of his mother? This court has held that an adopted child inherits in a dual capacity. In *Dreyer v. Shrick,* 105 Kan. 495, 185 Pac. 30, the court said, "A child by adoption, who is adopted the second time, inherits from his first foster parent." (Syl. § 2.) In *Baird v. Yates,* 108 Kan. 721, this court said: "In the case of *Dreyer v. Shrick,* supra, the rule was recognized that unless some statute destroy the capacity, an adopted child will inherit from both its natural and its adopted parents." (p. 722.) The logical conclusion to be drawn from the rule declared in these cases is that Theron Q. Bartram inherits from his grandfather both as the child of Mabel Thedrick and as an adopted child.

The appellant cites *Billings v. Head,* 184 Ind. 361, *Delano v. Bruerton,* 148 Mass. 619, and *Morgan v. Reel,* 213 Pa. St. 81. In these cases the rule is declared that a child adopted by its grandparent cannot inherit from the grandparent in the capacity of both a child and a grandchild. In the Indiana case the court used the following language:

"Our statutes of descent provide that an intestate's land shall descend, one-third to the widow and the remainder to his children in equal proportions, provided that if a child be dead leaving a child surviving the latter shall take the share which its parent would have inherited, if living. § 2991 Burns 1914, § 2468 R. S. 1881. Our statute dealing with the right of inheritance of an adopted child reads as follows: 'Such court, when satisfied that it will be for the interest of such child, shall make an order that such child be adopted, and from and after the adoption of such child it shall take the name in which it is adopted and be entitled to and receive all the rights and interest in the estate of such adopting father and mother, by descent or otherwise, that such child would if the natural heir of such adopting father or mother: *Provided, however,* That should such adopted child die intestate, without leaving wife or husband, issue or their descendants, surviving him or her, seized of any real estate or owning any personal property which may have come to such child by gift, devise or descent from such adopting father or mother, such property so coming to such adopted child shall, on its death, descend to the heirs of said adopting father or mother the same as if such child had never been adopted.' § 870 Burns 1914, *supra.*" (p. 362.)

The statute there quoted was given a place in the reasoning by which that court reached its conclusion. This state has no such statute. In the Massachusetts case the court said:

"The statute provides, in § 6, that, after the decree of adoption, all the rights, duties, responsibilities, and other legal consequences of the

Bartram v. Holcomb.

natural relation of child and parent, except as regards succession to property, shall exist between the child and the adopting parent, and shall, except as regards marriage, incest, or cohabitation, terminate between the adopted person and his natural parents and kindred. By § 7 it is provided that, 'as to the succession to property, a person adopted in accordance with the provisions of this chapter shall take the same share of property which the adopting parent could have devised by will that he would have taken if born to such parent in lawful wedlock, and he shall stand in regard to the legal descendants, but to no other of the kindred of such parent, in the same position as if so born to him.' Pub. Sts. c. 148, §§ 6, 7.

"The intent of the statute was to put an adopted child, for all legal purposes with certain carefully defined exceptions, in the place of a natural child, and to give him the same rights. If the statute had stopped here, it would seem clear that Henry Curtis would, in regard to the succession to the property of his adopting parent, stand as a son, and that his rights of succession as a grandson would be merged in his greater rights as a son.

"But the statute contains a further provision, at the close of § 7 that 'no person shall, by being adopted, lose his right to inherit from his natural parents or kindred.' Probably the legislature contemplated, what is in fact true, that most of the children adopted would be infants incapable of protecting their rights and of appreciating the effect of the transaction, and it was just to provide that they should not, without their intelligent consent, be deprived of the right to inherit the property of their natural parents or kindred. As applied to most cases, the provision is plain, and in harmony with the other parts of the statute, and there is no difficulty in carrying into effect every part of it. But when applied to the case before us, if it is to receive the construction claimed by the guardian of Henry Curtis, it becomes inconsistent with the main provisions of the statute.

"The same person cannot, as to the legal descendants of his adopting parent, stand in the position of his son and at the same time claim to inherit a portion of his property as his grandson. It is to be continually borne in mind, that we are not dealing with the question whether Henry Curtis can inherit as a son from his adopting parent and at the same time inherit directly from his father. If his father left property, he would have the right to inherit it. But the sole question is as to the right to inherit the property of his grandfather and adopting father in a double capacity, as his son and as his grandson. He claims the right to inherit, under the first part of the section, as his son, and under the last clause because he is included among his 'kindred.' When the legislature provided that no person should, by being adopted, lose his right to inherit from his natural parents or kindred, we do not think it understood or intended that 'kindred' should include the adopting parent. It intended to save the right of inheritance from other parties, having already provided as to the right of inheritance from the adopting parent. To bring this provision, when applied to a case like this, into harmony

with the other parts of the statute and with its general spirit and scope, we are of opinion that it should be held to apply to the inheritance of the property of some third person, and not to that of the property of the adopting parent." (p. 620.) .

The limitation placed by the Massachusetts statute on the right of an adopted child should be noticed because in that limitation is found a restriction on the right of the child to inherit.

In the Pennsylvania case the court said:

"The act of May 19, 1887, P. L. 125, after prescribing the conditions and mode of adoption, and, *inter alia*, that the adopted child 'shall have all the rights of a child and heir of the adopting parent' continues '*Provided*, That if such adopting parent shall have other children, the adopted shall share the inheritance only as one of them; in case of intestacy, he, she, or they, shall respectively inherit from and through each other as if all had been the lawful children of the same parent.'" (p. 89.)

Pennsylvania has placed qualifications on the right of an adopted child to inherit from the adopting parent, and out of those qualifications the Pennsylvania court deduced its rule.

Outside the statutory restrictions in Indiana, Massachusetts, and Pennsylvania limiting the right of an adopted grandchild to inherit from its adopting grandparent, the rule declared by the courts of those states appears to have been followed for the purpose of avoiding the incongruity that is presented by an adopted child inheriting more than a natural child of the grandparent, but the reasons given for the conclusions that were there reached are not convincing. The logic found in *Wagner v. Varner*, 50 Iowa, 532, is better. The Iowa court said:

"In the absence of a will the estate descends in equal shares to the children of the deceased. Code, § 2453. If one of the children of the deceased 'be dead, the heirs of such child shall inherit his share . . . in the same manner as though such child had outlived his parents.' Code, § 2454.

"Under section 2310 the wards of the plaintiff inherit as the children by adoption of John Bumer, and if Mahala Boyer had outlived him she would have inherited as the natural child of said Bumer, under section 2453; and section 2454 expressly provides that her children shall inherit in the same manner as though she had outlived her father.

"There is no escape from this conclusion unless it can be said that the child by the adoption is disinherited by its natural parent.

"Because of the adoption the child acquires certain additional rights, but there is nothing in the act of adoption which in and of itself takes

Bolmar v. Shawnee County.

away other existing rights, or such as may subsequently accrue, except as is by statute provided.

"The argument that these children cannot inherit through their mother leads to this result. Suppose their father after her death consented to their adoption, they could not inherit through their mother or from their father, or through him from a remote ancestor.

"By the act of adoption these children became in a legal sense the children of John Bumer. Nevertheless they are the children of their natural parents, and the act of adoption does not deprive them of the statutory right of inheriting from their natural parents, unless there is a statute which in terms so provides. Not only is there no such statute, but we think the contrary is expressly provided.

"If, therefore, a child is adopted by a stranger it will inherit from its natural parents, in the absence of a will, because section 2453 of the Code in express terms so privides." (p. 533.)

In each of these cases a grandchild had been adopted by its grandparent, and the right of the grandchild to inherit from its grandparent in a double capacity was involved. Extensive excerpts from these cases have been set out for the purpose of showing the reasoning by which the different conclusions were reached. The inequality in the present case is created by statute.

The judgment is affirmed.