No. 77,071

IN THE MATTER OF THE ESTATE OF MORRIS P. VAN DER VEEN
and DEANNE M. VAN DER VEEN, Deceased.

(935 P.2d 1042)

Opinion filed
April 18, 1997.

*David O. Baumgartner*, of Baumgartner Law Office, of Phillipsburg, argued the cause and was on the brief for appellant guardian ad litem.

*Daniel C. Walter*, of Ryan, Walter & McClymont, Chtd., of Norton, argued the cause and was on the brief for appellee Laura Van Der Veen.

The opinion of the court was delivered by

ALLEGRUCCI, J.: This is an appeal from the decision of the district court denying one-half of the estate of Morris and Deanne Van Der Veen to their biological grandchild, D.B.B. Decedents' son, Kent Van Der Veen, was disqualified under K.S.A. 1996 Supp. 59-513 (slayer statute) from inheriting any portion of their estate. The case was transferred from the Court of Appeals to this court pursuant to K.S.A. 20-3018(c).

The facts are not in dispute. The matter was decided by the district court on the following stipulated facts: The decedents, Morris and Deanne Van Der Veen, were the parents of Kent. On or about April 30, 1993, Kent murdered his parents. Kent was 19 years old at the time. Two years earlier, Kent fathered a child, who had been legally adopted by unknown persons prior to April 30, 1993. The decedents never were aware of the existence of the minor child.

Laura Ann Van Der Veen is the decedents' daughter. Decedents had no other heirs, devisees, or legatees. At the time Kent killed his parents, he had no testamentary instrument of his own.

The 1989 joint will of Morris and Deanne Van Der Veen provides for the following distribution of assets that remain after their debts and obligations are satisfied:

"Upon the death of the survivor of us, each of us hereby gives, devises, and bequeaths all of the rest, residue, and remainder of our property of every kind, character, and description, and wherever located, unto our children, Laura Ann Van Der Veen and Kent Phillip Van Der Veen, equally and per stirpes."

This court has de novo review of this case for several reasons. It was decided on the basis of stipulated facts. *Lightner v. Centennial Life Ins. Co.*, 242 Kan. 29, Syl. ¶ 1, 744 P.2d 840 (1987). It involves interpretation of a statute, a question of law. *Todd v. Kelly*, 251 Kan. 512, 515, 837 P.2d 381 (1992). And it involves the construction of a written instrument, the Van Der Veens' will, and determination of its legal effect. See *Galindo v. City of Coffeyville*, 256 Kan. 455, Syl. ¶ 2, 885 P.2d 1246 (1994).

In their will, the Van Der Veens bequeathed one-half of their estate to each of their children, Laura and Kent. It is agreed that Kent is statutorily disqualified from inheriting property from his parents. At all pertinent times, it has been provided by statute:

"No person convicted of feloniously killing, or procuring the killing of, another person shall inherit or take by will[,] by intestate succession, as a surviving joint tenant, as a beneficiary under a trust or otherwise from such other person any portion of the estate or property in which the decedent had an interest." K.S.A. 1996 Supp. 59-513.

This appeal challenges the district court's determination that the statute prevails over the express terms of the Van Der Veens' will, resulting in D.B.B.'s being disinherited. The argument made on behalf of D.B.B. by her guardian ad litem is that the language of her grandparents' bequest to their children, "equally and per stirpes," must be construed to give what would have been Kent's share, if he had not been disqualified, to his heir, D.B.B. D.B.B.'s guardian ad litem further argues that D.B.B.'s adoptive status is irrelevant because K.S.A. 59-2118(b) provides that "[a]n adoption

shall not terminate the right of the child to inherit . . . through the birth parent."

Appellee Laura Van Der Veen counters that the language of 59-2118(b), on which D.B.B. relies, was added in 1993 and became effective after the Van Der Veens' deaths. If the effective date of the amendment does not prevent it from applying in the present case, appellee further argues, the statute should be construed to restrict inheritance "through the birth parent" to instances where the birth parent has died. In other words, it should be interpreted so as to exclude inheritance through a birth parent who is alive but disqualified. In appellee's words, the statute should be interpreted so that the disqualified killer is treated as if he never existed rather than as if he had died.

We first address whether D.B.B.'s adoption affects her right to inherit from her biological grandparents. There is no doubt that the legislature intended that 59-2118(b), at all pertinent times, permitted an adoptee to inherit from and through his or her biological parents. A thorough exploration of the question whether adopted children may inherit from their biological parents was undertaken by the Court of Appeals in *In re Estate of Hinderliter*, 20 Kan. App. 2d 29, 882 P.2d 1001, *rev. denied* 256 Kan. 995 (1994), where the court stated:

"By enacting L. 1993, ch. 195, concerning *inter alia* inheritance rights of adopted children, the Kansas Legislature codified early Kansas case law that allowed adopted children to inherit from their biological parents and rejected more recent decisions that did not allow children to inherit from biological parents whose parental rights had been severed." Syl. ¶ 4.

In that enactment, the sentence, "An adoption shall not terminate the right of the child to inherit from or through the birth parent," was added to 59-2118(b). L. 1993, ch. 195, § 4. The "early Kansas case law" referred to by the Court of Appeals is:

"*Bartram v. Holcomb*, 109 Kan. 87, 198 Pac. 192 (1921); *Baird v. Yates*, 108 Kan. 721, 196 Pac. 1077 (1921); and *Dreyer v. Schrick*, 105 Kan. 495, 185 Pac. 30 (1919).

"In *Dreyer*, the court held a child adopted by one set of parents, then subsequently adopted by another set of parents, may inherit from the first set of adoptive parents. 105 Kan. 495, Syl. ¶ 2. In *Baird*, the court held that absent a statute

to the contrary, a biological parent may inherit from a child adopted by another. 108 Kan. 721, Syl. ¶ 2. And in *Bartram*, the court held a child adopted by a grandparent after the death of the child's parent may inherit from the grandparent in a dual capacity: as both a child and as a grandchild. 109 Kan. 87, Syl." 20 Kan. App. 2d at 31.

The Court of Appeals quoted from House Judiciary Attachment # 4, which the Judicial Council offered in support of the amendment. It confirms that the early cases " 'hold that, absent a statute to the contrary, a child inherits from both natural and adoptive parents.' " 20 Kan. App. 2d at 32. Thus, the Court of Appeals concluded that the 1993 amendment to 59-2118 merely codified existing law so that the rule should be given effect whether decedent died before or after the effective date of the statutory amendment, July 1, 1993. 20 Kan. App. 2d at 32.

Although the circumstances in *Hinderliter* did not include inheritance through a biological parent, *Bartram v. Holcomb*, 109 Kan. 87, 198 Pac. 192 (1921), one of the cases considered by the Court of Appeals, did. *Bartram* is authority for applying the rule codified in 59-2118(b) without regard to the date of death, and the statute expressly provides for inheritance *through* a biological parent as well as *from* one.

*Hinderliter* is a convincingly documented and well-reasoned opinion, and nothing has been brought to this court's attention that would weaken or alter its axiom. We find the Court of Appeals' rationale persuasive and conclude that D.B.B.'s adoption would not bar her from inheriting from or through her biological parent.

We next consider whether Kent's being barred from inheriting from his parents prevents the inheritance from passing through him to his child. This was the basis for the trial court's decision and has not been decided by the appellate courts of this state. The question has arisen in other jurisdictions, however, and has been pondered by commentators, scholars, and the National Conference of Commissioners on Uniform State Laws.

In *In re Estate of Benson*, 548 So. 2d 775 (Fla. Dist. App. 1989), a murderer's minor children were allowed to inherit his share of intestate and testate estates. Margaret Benson, the deceased testator, was the mother of Carol Benson Kendall, Steven Benson,

and Scott Benson. Steven had minor children; Scott had no heirs. Steven killed Margaret and Scott. Margaret's will devised her property to her three children in equal shares and per stirpes. Scott died intestate. An intestacy section of Florida's probate code provides that the property of a decedent such as Scott, without parents or lineal descendants, passes to the decedent's siblings and the descendants of deceased siblings. Florida's "slayer statute" provides that "the estate of the decedent passes as if the killer had predeceased the decedent." 548 So. 2d at 777. The trial judge applied Florida's anti-lapse statute in concluding that Steven's minor children inherited through him. The District Court of Appeals reached the same conclusion for somewhat different reasons:

> "It would have been the correct result in any event, i.e., whether the express provisions of the will were utilized or whether the Anti-Lapse Statute was used. Margaret Benson's will devised her property to her children 'per stirpes.' Even though the drafter of the will testified in the murder trial that she intended a class gift to her children, since a class gift is not expressly provided by the terms of the will even if the term 'per stirpes' had been omitted from the will, section 732.611, Florida Statutes (1985), would have applied to make the devises and bequests 'per stirpes.' Further, even if Margaret Benson's will had provided for a class gift to her three children, the Anti-Lapse Statute would have substituted Steven Benson's minor children in his place as a devisee under the will in the absence of a contrary intent expressed in the will." 548 So. 2d at 778.

At the time *Benson* was being considered by the Florida District Court of Appeals, the pertinent section of the Uniform Probate Code (UPC) was worded like the Florida statute. Unif. Probate Code § 2-803(a), 8 U.L.A. 172 (1983) provided that a surviving heir or devisee who intentionally and feloniously killed the decedent "is not entitled to any benefits under the will or under this Article, and the estate of decedent passes as if the killer had predeceased the decedent." Although the section was "substantially revised" in 1993, "the main thrust of the pre-1990 version" was not altered. Unif. Probate Code § 2-803, Comment, 8 U.L.A. 200 (1996 Supp.). Subsections (b), (c), and (e) of the current version of § 2-803 provide that a decedent's estate, intestate or under a will, passes as if the killer disclaimed his or her share. The effect of disclaimer, as established in Unif. Probate Code § 2-801(d), 8 U.L.A. 196 (1996 Supp.) is as follows:

"If property or an interest therein devolves to a disclaimant under a testamentary instrument . . . or under the laws of intestacy . . . the disclaimed interest devolves as if the disclaimant had predeceased the decedent, but if by law or under the testamentary instrument the descendants of the disclaimant would share in the disclaimed interest by representation or otherwise were the disclaimant to predecease the decedent, then the disclaimed interest passes by representation, or passes as directed by the governing instrument, to the descendants of the disclaimant who survives the decedent."

The Kansas statute that sets out the effect of disclaimer is K.S.A. 59-2293(a). It provides generally that disclaimed property shall descend or be distributed as if the disclaimant had predeceased the decedent.

With regard to the UPC, the Tennessee Court of Appeals, in *Carter v. Hutchison*, 707 S.W.2d 533, 537 n.10 (Tenn. App. 1985), noted:

"A vast majority of states enacting the forfeiture statutes have patterned them after the model statute proposed by Dean Wade in 1936, see J. Wade, [*Acquisition of Property by Willfully Killing Another—A Statutory Solution*, 49 Harv. L. Rev. 715, 753-55 (1936)], or the Uniform Probate Code. Thus, in twenty-nine states there is a statutory presumption that the victim's property passes to his estate as if the slayer had predeceased the decedent. See Uniform Probate Code § 2-803 (1983) and J. Wade, *supra* n. 5 at 753 Section 4. Four states provide for forfeiture but are silent as to distribution. Tennessee is among ten states that provide for forfeiture and for distribution to the decedent's heirs through the laws of intestate succession. The eight remaining states without statutes have forfeiture provisions by court decision. See generally Maki & Kaplan, [*Elmer's Case Revisited: The Problem of the Murdering Heir*, 41 Ohio St. L.J. 905, 957 (1980)]."

See McGovern, *Homicide and Succession to Property*, 68 Mich. L. Rev. 65, 66-67 (1969). It appears that Kansas is one of the few states that does not expressly provide for distribution of the forfeited share.

Turning to the present case, it is clear that under either version of the UPC, appellee would take one-half of the estate of her parents. The other half would be taken by her disqualified brother's minor child.

Kansas' anti-lapse statute, K.S.A. 59-615(a), provides, in part:

"If a devise or bequest is made to . . . any relative by lineal descent . . . and such . . . relative dies before the testator, leaving issue who survive the testator, such issue shall take the same estate which said devisee or legatee would have

taken if he or she had survived, unless a different disposition is made or required by the will."

The anti-lapse provision is not applicable in the present case. The possibility that one or both of their children would predecease them was taken into account in the Van Der Veens' will by the inclusion of the phrase "per stirpes." That phrase is defined in Black's Law Dictionary by reference to a Kansas case, *Buxton v. Noble*, 146 Kan. 671, 676-77, 73 P.2d 43 (1937). Black's defines "per stirpes" as the

"method of dividing an intestate estate where a class or group of distributees take the share which their deceased would have been entitled to, had he or she lived, taking thus by their right of representing such ancestor, and not as so many individuals. It is the antithesis of *per capita* . . . ." Black's Law Dictionary 1144 (6th ed. 1990).

In *Buxton*, the court quoted a treatise to the effect that the principle of distribution by representation generally applies "only when the claimants are related to the intestate in unequal degrees." 146 Kan. at 676-77. For example, if X had been the mother of three children and had died before her parents did, her three children would have been entitled to take the one-half of their grandparents' estate that was bequeathed to their mother per stirpes. If Y, X's brother, had not predeceased his parents or had not been disqualified from doing so, he would have taken the other one-half of their estate. X's three children and Y would be related to the testators in unequal degrees, grandchildren and child, respectively. Thus, under the terms of the testators' will, the resulting distribution would have been the same as if the anti-lapse statute had been applied.

The disposition of the slayer's share is one of four issues identified as unresolved by 59-513 and discussed in a 1984 law review article. Kuether, *Barring the Slayer's Bounty: An Analysis of Kansas' Troubled Experience*, 23 Washburn L.J. 494, 495, 519-26 (1984). In introducing the topic, Professor Kuether stated:

"Some jurisdictions have held [that the slayer's share] should pass as though the slayer predeceased the victim. It would thus pass to the victim's other heirs, including those who would be the slayer's heirs if they also would be the victim's

heirs. Others have barred all those who would take through the slayer." 23 Washburn L.J. at 519.

Professor Kuether did not cite case law to support his assertions. He also stated that there was scholarly opinion favoring both dispositions:

"Professor Wade suggested that anti-lapse and representation should not be allowed, but gave no reason for this conclusion. [Wade, *Acquisition of Property by Wilfully Killing Another—A Statutory Solution*, 49 Harv. L. Rev. 715 (1936).] Professor McGovern recognized the problem and suggested that the slayer's heirs should take. [McGovern, *Homicide and Succession to Property*, 68 Mich. L. Rev. 65 (1969).]" 23 Washburn L.J. at 521.

In Professor Kuether's opinion, McGovern's suggestion "is the better solution and probably reflects the victim's intent." 23 Washburn L.J. at 521. Kuether continued:

"Taking by representation and the anti-lapse statute both represent the state's policy regarding the decedent's presumed intent if the primary taker, the slayer, cannot take. In most cases this will be accurate, as where a grandchild takes from the victim grandparent's estate as a representative of the slayer-child. It is unlikely the grandparent would wish to punish the innocent grandchild." 23 Washburn L.J. at 521.

Professor Kuether points out several other aspects of Kansas law, past and present, that may have some persuasive value in this matter. First, he notes that "Kansas cases have held that those taking by representation take subject to their ancestor's equities." 23 Washburn L.J. at 519. Kuether recommends distinguishing those cases (not identified in the article) on the ground that they "involve different policies." 23 Washburn L.J. at 520. Second, from 1907 until 1939 the slayer statute "provided that the share which would have passed to the slayer 'shall descend and be distributed to such other person or persons as may be entitled thereto by the laws of descent and distribution, as if the person so convicted were dead.' " 23 Washburn L.J. at 520 (quoting L. 1907, ch. 193, § 1). Among other changes made in 1939 was the removal of the provision for disposition of the slayer's share. Kuether asserts that the primary purpose of the amendment was to clarify an ambiguous statute, and he speculates that the amendment was not intended to change disposition of the slayer's share. 23 Washburn L.J. at 520. The 1907 version stated:

"Any person who shall hereafter be convicted of killing or of conspiring with another to kill, or of procuring to be killed, any other person from whom such person so killing or conspiring to kill or procuring said killing would inherit the property, real, personal, or mixed, or any part thereof, belonging to such deceased person at the time of death, or who would take said property by deed, will or otherwise at the death of the deceased, shall be denied all right, interest and estate in or to said property or any part thereof, and the same shall descend and be distributed to such other person or persons as may be entitled thereto by the laws of descent and distribution, as if the person so convicted were dead." L. 1907, ch. 193, § 1.

As explained by Professor Kuether, the potential problem in this statute is that if the victim bequeathed property to the killer with a gift over to another should the killer predecease the testator, a literal reading of the statute would have voided the gift over and passed the property to the killer's heirs. In Kuether's view, the 1939 amendment of the slayer statute was intended to avoid the problem by eliminating the provision for disposition of the slayer's share. Although the specified ambiguity could have been remedied by deleting the references to descent and the laws of descent, the legislature eliminated the entire directive for disposition of the slayer's share. The well-known axiom that the legislature's revising an existing law raises a presumption that the legislature intended to change its effect, *Hughes v. Inland Container Corp.*, 247 Kan. 407, 414, 799 P.2d 1011 (1990), however, could lead to a different conclusion. This court has stated:

"[T]his presumption may be strong or weak according to the circumstances, and may be wanting altogether in a particular case. The presumption is fairly strong in the case of an isolated, independent amendment, but is of little force in the case of amendments adopted in a general revision or codification of the law. [Citations omitted.]" *Board of Education of U.S.D. 512 v. Vic Regnier Builders, Inc.*, 231 Kan. 731, 736, 648 P.2d 1143 (1982).

The 1939 amendment of the slayer statute was one provision out of the 281 sections making up the extensive act that established the Kansas Probate Code. L. 1939, ch. 180, § 35; L. 1939, ch. 180, §§ 1-281. Thus, the presumption would be weak at best in the circumstances of the present case.

Professor Kuether also found support for construing the slayer statute as disposing of the slayer's share as if he or she predeceased

the testator in *Russell v. Estate of Russell*, 216 Kan. 730, 534 P.2d 261 (1975). 23 Washburn L.J. at 520-21. Under K.S.A. 59-610, a will written during marriage is revoked as to the spouse upon divorce. In *Russell*, this court ruled that the statute would be applied and the property would pass as if the former spouse failed to survive the decedent. 216 Kan. at 733. After citing cases from other jurisdictions that reached the same conclusion, the court stated:

"The rule of these cases also finds support in the Uniform Probate Code § 2-508 which provides in pertinent part as follows:

'. . . Property prevented from passing to a former spouse because of revocation by divorce or annulment passes as if the former spouse failed to survive the decedent, . . .' While the Kansas statute does not contain this provision of § 2-508 of the Uniform Probate Code, we are impressed by the fact that it was approved by the National Conference of Commissioners on Uniform State Laws and by the American Bar Association in 1969.

"We have concluded that the rule applied by the trial court and asserted by the appellee on this appeal should be adopted and followed in this jurisdiction. We hold that under the factual circumstances and the will provisions in this case, property which is prevented from passing to a former spouse because of revocation by divorce or annulment under the provisions of K.S.A. 59-610 passes as if the former spouse failed to survive the decedent. We take this position not only because of the fact that it represents the majority view but also because we consider it the better reasoned rule and more in line with the rationale of prior decisions of this court." 216 Kan. at 733-34.

Finally, Professor Kuether undertook to show why two possible objections to considering the slayer to have predeceased the victim were not significant. The first is that the slayer might act in order to benefit his heirs. He suggests that "[t]his will be rare since it is a very costly gift by the slayer." 23 Washburn L.J. at 523. Furthermore, to bar all taking by representation and by anti-lapse with the exceptional slayer in mind would be unjust and typically contrary to the victim's intent. The second "is Kansas' traditional position that those who take by representation take subject to the equities against their ancestors." 23 Washburn L.J. at 523. Kuether's analysis why this principle is not applicable in the case of a slayer/beneficiary is convincing. He states that the principle was developed in cases where an heir claims through a person who was indebted to the decedent. The shares of the other beneficiaries were reduced by the amount of the indebtedness. In contrast, the

other beneficiaries' shares have not been reduced by the slayer's killing the decedent. In fact, their benefits have been accelerated. Thus, just treatment of the other beneficiaries does not demand that the slayer's heirs be disqualified or penalized. 23 Washburn L.J. at 523-24. To illustrate this proposition in the circumstances of the present case, we need only look at appellee's situation. She would take one-half of her parents' estate if they had died from natural causes, and she would take the same if Kent is disqualified for killing their parents and his share passes as if he predeceased them. In contrast, if Kent's child were disqualified because Kent killed his parents, the innocent child would be penalized, and appellee would take twice what the testators intended and what she expected.

Appellee argues that the court might more profitably examine analogies involving bona fide purchasers. She urges the court to apply an analogue to the rule that a bona fide purchaser takes no better title than the seller had. The revocation-by-divorce statute considered by the court in *Russell*, however, is much more closely analogous than bona fide purchaser principles. It is also more persuasive.

We conclude that the better rule where the slayer's heir or heirs are wholly innocent would be to dispose of the disqualified slayer's share as if the slayer predeceased the victim(s). We find authority for this rule in this court's reasoning in *Russell* with regard to the analogous revocation-by-divorce statute. Moreover, when the rules that this court has developed in construing wills are applied in the circumstances of this case along with K.S.A. 1996 Supp. 59-513, we reach the same conclusion. In *Russell*, the court stated:

"In construing a will courts must (a) arrive at the intention of the testator from an examination of the whole instrument, if consistent with rules of law, giving every single provision thereof a practicable operative effect, (b) uphold it if possible, (c) avoid any interpretation resulting in intestacy when possible, (d) give supreme importance to the intention of the testator, and (e) when the language found in such instrument is clearly and unequivocally expressed determine the intent and purpose of the testator without resort to rules of judicial construction applicable to the interpretation of an instrument which is uncertain, indefinite and ambiguous in its terms. (Following *In re Estate of Porter*, 164 Kan. 92, 187 P.2d 520.)" 216 Kan. 730, Syl. ¶ 1.

The Van Der Veens intended for their daughter to take one-half of their estate. Their knowledge of Kent's troubled nature is reflected in a provision of the Van Der Veens' will that nominates Laura to serve as Kent's guardian and conservator. Nonetheless, they bequeathed one-half of their estate to him. There is nothing in the instrument from which the court could conclude that the Van Der Veens intended for Laura to receive the entire estate in the event of Kent's incapacity or disqualification. By extension, it may reasonably be inferred that they would not have intended for Kent's innocent child to be disqualified in order for Laura to receive the entire estate.

Appellee invites the court to speculate that the Van Der Veens would not have intended for their unknown, illegitimate grandchild to share in their estate. We decline the invitation and note there is no factual support in the record for such a speculation.

The judgment of the district court is reversed.