## Villier, et al. v. Watson's Administratrix.

(Decided February 23, 1916.)

Appeal from Jefferson Circuit Court
(Chancery Branch, First Division).

1. Adoption—Inheritance.—The right of one, not the child of another, to inherit from such other, as though he were a child of such other, derives its entire life from the statute, and the decree of the court is the source for determining the rights of the parties under the statute and is conclusive.

2. Adoption—Judgment—Collateral Attack.—A final decree of adoption is conclusive upon all parties interested in the proceedings, and such a judgment can not be collaterally attacked.

3. Adoption—Inheritance.—The right of an adopted child to inherit from its adoptive parent is based upon the statute, and not upon common law nor civil law status.

4. Adoption—Inheritance.—The court is empowered to declare an adopted child to be an heir of an adoptive father, not because he is awarded the parental control of the child, but the court may grant the parental control of the child to the adoptive father, because the child is made his heir.

BENJAMIN F. GARDNER for appellants.

W. H. McCULLOUGH and J. W. S. CLEMENTS for appellee.

Opinion of the Court by Judge Hurt—Affirming.

Paul Villier, who was a resident of Jefferson county, filed a petition in the Jefferson circuit court, by which he sought to adopt Ruth N. Watson and Nellie Marie Watson, who were two infant children, under the provisions of sections 2071 and 2072, of the Kentucky Statutes. He stated in his petition that he was a resident of Jefferson county, and that the infants were also domiciled in the county; that Ruth Naomi Watson was twelve years of age and Nellie Marie Watson was seven years of age; that their father and mother were dead, and they were then in the custody and control of their grandfather, Henry Watson, who joined in the petition for the purpose of consenting that Villier should have the parental control of the children; that he, Villier, desired to adopt the children and make them capable of inheriting from him as his heirs at law, and prayed that the court render a judgment to that effect. Afterwards he filed an amended petition, in which he stated that he had been a married man, but had obtained an absolute divorce from his wife, and had been restored to all the rights and privileges of an unmarried person. On the 9th day of April, 1906, the action having been submitted, the court adjudged that Villier was a person over twenty-one years of age, and that "the said Ruth Naomi Watson and Nellie Marie Watson and each of them are hereby declared to be heirs at law of the said Paul Villier, and as such capable of inheriting as though they and each of them were the children of said Villier. The said Villier is, further, awarded and given the parental control of said children and each of them, and said Villier, with respect to said children, shall be under the same responsibilities as if they and each of them were his own children." Villier took the custody of the children and they resided with him at his residence for about four years, during which time he seems to have treated them kindly and provided for their wants, as a real father, but at the end of this time the older girl, Ruth Naomi Watson, left the home of Villier and went to that of her grandfather, Henry Watson. With the consent of Villier, the grandfather removed the younger girl from the home of Villier to his home.

Thereafter, the grandfather, Henry Watson, filed his petition in the Jefferson circuit court, in which he alleged

the infancy of the two children; the fact that they were declared by the former judgment of the court to be the heirs at law of Villier and their parental control conferred upon Villier; that "he, Watson, was desirous of adopting the children and making them capable of inheriting as his heirs at law," and, also, of having the parental control of the children; that he and said children were residents of the county, and prayed that they be declared his heirs at law, and as such capable of inheriting from him as though they were his children, and that he be given the parental control of them." Paul Villier joined in the petition and consented to their adoption by Watson, and, also, that Watson have the parental control of them.

This cause having been submitted for trial, the court adjudged the children to be the heirs at law of Watson, and capable, as such, of inheriting as his heirs at law, and reciting the fact that Villier, who, by the former judgment, had been given parental control of the children, having consented to Watson having their parental control, also adjudged that Watson have the parental control of the children.

Previous to the time of their adoption by Villier, their grandfather, Henry Watson, had been appointed and qualified as the statutory guardian of the two girls.

After the last mentioned judgment the girls never resided with Villier. On January 2, 1915, Villier died, intestate, domiciled in Jefferson county. He did not leave surviving him any children of his own, but there survived him one sister and three half sisters, and two nephews and a niece, children of a deceased brother.

On January 9, 1915, Ruth N. Watson, who, at that time, was above the age of twenty-one years, applied, as a relation of the decedent, entitled to a distributive share of decedent's estate, for appointment as administratrix of his estate. The county court sustained her motion and granted her the administration of the estate. She executed bond as such, and proceeded to the administration. On January 11, 1915, the above named kinsfolk of the decedent entered a motion in the county court to set aside the order appointing the appellee as administratrix, and to appoint in her stead the Louisville Trust Company. The county court overruled the motion, and from the order overruling their motion, they appealed to the circuit court. The circuit court sustained the

action of the county court, and refused to remove the appellee as administratrix, and from its judgment the collateral heirs of Villier have appealed to this court.

It is conceded, that if appellee is a daughter of decedent by adoption, and entitled to inherit from him, as though she were his child, the motion of appellant's to have her removed as administratrix ought not to prevail, but if she is not such heir and not entitled to inherit from him, as though she were his child, the appellants ought to succeed upon their motion.

It is also conceded, that, by virtue of the judgment of the court, by which Villier adopted the appellee and her sister, and which declared them to be his heirs, and as such capable of inheritance from him, as though they were children of his, the appellee became an heir of Villier, at his death, and entitled to inherit from him, as though she were a child of his, and to inherit such portion of his estate as she would inherit if she were his own child, under the terms of the statutes which constitute the laws of descent and distribution, in this State. Thus, the controversy is narrowed to the determination of what effect, if any, the judgment of the court, by which the girls were adopted by Watson, had upon the judgment of adoption of them by Villier, and what effect, if any, the subsequent conduct of the parties had upon the efficacy of the judgment, through which they were adopted by Villier.

This being one of the states which derives its legal principles and theories in large part from those of the common law, had no provision in its laws, whereby one could make another, who was an alien to his blood, an heir of his, in the sense of a child, until in the year 1860, when a statute was adopted, which, for the first time, in its judicial history, permitted persons, not of kin, to assume such relations as would enable one to inherit from another, as though he were a child of such other. The right of one, not the child of another, to inherit from such other, as though he were a child of such other, must then necessarily derive its entire life from the terms of the statute, and must depend upon the fact that there has been a compliance with the statute. The statute under which the deceased, Villier, adopted the appellee and her sister are sections 2071 and 2072, Ky. Statutes, and which are as follows:

"Sec. 2071. Any person twenty-one years of age may, by petition filed in the circuit court of the county of his residence, state in substance, that he is desirous of adopting a person, and making him capable of inheriting as heir at law of such petitioner; and said court shall have authority to make an order declaring such person heir at law of such petitioner; and, as such, capable of inheriting as though such person were the child of such petitioner; but no such order shall be made if the petitioner be a married man or woman, unless the husband or wife join in the petition."

"Sec. 2072. Said court shall have authority, by consent of the parents, or either of them, if one be dead, to give the petitioner the parental control of such adopted person, if an infant; and said petitioner shall be under the same responsibilities as if the person so adopted were his own child."

It will be observed that the court has authority, upon application of one who is desirous of adopting another and making him capable of inheriting from him as his heir, to render a judgment declaring such person to be the heir of the petitioner, and capable of inheriting from him, as though he were the child of the petitioner; and this the court may do without the consent of the person adopted, as an heir, or any one for him; but, if the person adopted is a minor, the court may adjudge that the petitioner have the parental control of the one adopted, upon the consent of his parents, or one of them who may be living. In order to make valid an adoption as an heir, the parental control does not necessarily go with the adoption as an heir.

The decree of the court is the source for determining the rights of the parties under the statute and is conclusive. The decree, in the case at bar, adjudged that appellee was an heir at law of the decedent, and as such capable of inheriting from him, as though she were his own child. In I. C. J., 1391, it is said:

"A final decree of adoption is conclusive upon all parties interested in the proceedings." The same authority, I. C. J., 1393, holds that a judgment of adoption cannot be collaterally attacked, except for want of jurisdiction of the court, which rendered it. In 23 Cyc., 1055, the rule is laid down:

"A judgment rendered by a court having jurisdiction of the parties and the subject matter, unless re-

versed or annulled in some proper proceeding, is not open to contradiction or impeachment, in respect to its validity, verity or binding effect, by parties or privies, in any collateral action or proceeding.''

To the same effect is the doctrine as stated in 1 R. C. L., 626, 627.

The same is the rule in this State. Paul v. Smith, 82 Ky., 451; Com. v. Morrison, 4 Bibb, 336; McIlvoy v. Speed, 4 Bibb, 85; Luckett v. Gwathmey, Litt. Sel. Cases, 121. No action or proceeding was ever brought for annulling or overturning the judgment. The proceeding by Watson to adopt the children as his heirs and to obtain parental control of them and to which Villier gave his consent, did not seek to annul or set aside the prior judgment of adoption by Villier, and the judgment rendered by the court in the action did not attempt to disturb the prior judgment of adoption. The judgment rendered in the second proceeding, it will be observed, did not declare the children to be capable of inheriting from Watson, as though they were his children, but declared them to be heirs at law of Watson, which they already were, as they were the children of his deceased son, and hence the only change rendered by the judgment, in their status, was a change of right of parental control of them from Villier to Watson, which, as the judgment recites, was by the consent of Villier. The judgment by which appellee and her sister were declared to be the heirs of Villier and as such capable of inheriting from him as though they were his own children, never having been annulled or set aside in any direct proceeding for that purpose, it seems must now be con-clusive upon all parties and immune from collateral attack.

It is, however, insisted for appellants that it was unnecessary to set aside the judgment decreeing the children to be heirs of Villier, in order for them to lose the right of inheritance from him, because the second adoption was procured by the same parties who petitioned for the first adoption, and the court was authorized to annul its first judgment, by which Villier made the adoption, upon their request. Without determining whether it was within the power of the court to set aside the judgment by which Villier made the adoption, it is sufficient to say that such request was not made by the parties, nor such relief granted by the court.

Relying upon analogies, which counsel claim to draw from the civil law, it is insisted that a second adoption so changes the status of the child, that it loses its right of inheritance from the first adoptive father. These analogies are drawn from the civil law, upon the theory that as the law of adoption was unknown to the common law, and was a creature of the civil law, that its principles ought to govern the status of an adopted child and control its rights of inheritance. The right of an adopted child to inherit is, however, based upon the statute, and not upon any common law or civil law status. This court, in Atchison v. Atchison's Extr., 89 Ky., 489, said:

"The adoption, as authorized by our statute, gives the one adopted the status of a child with all the capacity to inherit that it would have, if in fact the child of one adopting it."

In the same case the following language was used:

"The mode of descent and distribution is regulated by the statute under which all of these parties would have taken, if there had been no will, and when the adoptive father dies intestate, the child inheriting, as if in fact a child of the decedent, can take in no other mode than that pointed out by the statute."

From these excerpts, the conclusion is drawn that the court was following the analogies of our own statute laws regulating descent and distribution, and not drawing its conclusions from the civil law. While, in the case of Power v. Hafley, 85 Ky., 671, the court called the civil law to its aid, and the conclusion reached was one in consonance with our laws of descent. In that case, it was held that the adopted child's children inherited as grandchildren from the adoptive father, where the adopted child died before the adoptive father. The same rule would have applied in the case of the children of a real son or daughter, who died before its parent. In Lanferman v. Vanzile, 150 Ky., 751, it was held, that property received by an adopted child from his adoptive father returned to that parent or his kindred, when the adopted child died in infancy, and without issue, and property held by an adopted child, which it received from its father, returned to him, when the child died in infancy. In Anderson v. Mundo & McGraw, 77 S. W., 926, it was held that the property of an adopted child could not be reached by the creditors of the adoptive parents,

upon the ground that its maintenance had been borne by the adoptive parents. In the case of Atchison v. Atchison, *supra*, it was held, under the statute of descent and distribution, in force, at that time, that where there was an adopted child, which survived the adoptive father, that the widow could only take one-third of the personalty, instead of one-half, to which she was entitled, in case of the death of the husband, leaving no issue. In Drain v. Violett, 2 Bush, 156, it was held that a son, who had been adopted by the husband and not by the wife, through an act of the General Assembly, could not inherit from the widow of his adoptive father. His case was analogous to a son who cannot inherit from a stepmother. Hence, it appears that this court, in determining the rights of inheritance of adopted children, has followed the analogies to be drawn from our own laws of descent, rather than from such as may be drawn from the civil law; but no analogy has been allowed to have effect beyond the terms and purpose of the statute authorizing adoption. All the authorities agree, that the fact of adoption does not lose the adopted child's right of inheritance from his parents. With this right existing, it would be difficult to see why a child could not inherit from two or more persons, who might, by adoption, bestow that right upon him. If such rule, as is contended for by appellants, should prevail, and a child was held in adoption, the adoptive father, or other designing person, could take away the child's right of inheritance from the adoptive father, by procuring some penniless person to adopt the child as his heir, which he might do without the child's or any one else's consent and the parental control could be acquired by the consent of the adoptive parent. In Russell's Admr. v. Russell's Guardian, 14 R., 236, the Superior Court held that where a child under the control of the Louisville Baptist Orphans' Home was adopted, and the adoptive father dies, and the home cancelled the contract of adoption in consideration of another adopting the child, it did not deprive the child of its right of inheritance under the original article of adoption.

It is insisted that the adoption by Villier was not, alone, as provided by section 2071, *supra*, but as provided by that, and, also, as provided by section 2072, *supra*, that is, the same judgment which declared appellee to be an heir of Villier, also, gave the parental con-

trol of her to him, and the judgment in the proceeding by Watson having bestowed the parental control upon Watson, that it had the effect to abrogate the judgment in the proceeding by Villier, in toto, and thus took away the right of appellee to inherit from Villier as his heir. In this contention we cannot concur. The statute does not empower the court to declare an adopted child an heir of an adoptive father, because he is awarded the parental control of the child, but it empowers the court to grant the parental control of the child to the adoptive father, because the child is made his heir and made capable of inheriting from him, as though it were his child. The intent of both sections of the statute, *supra*, when invoked, is to create the same relations between an adopted child and its adoptive father as a child bears, under the laws, to its own father, as near as may be. The courts are invested with authority, in proper cases, to take the parental control of children from their parents and to vest such control in another, when the good of the child demands such drastic action. Section 2123, Ky. Statutes; Hamilton v. Bedford, 153 Ky., 429.

When the law, through the courts, takes a child from the parental control of the parent, the action does not destroy the right of inheritance from the parent by the child. Neither does the wilful or unjustified departure of the child from the parental roof and control destroy its right of inheritance. The parent cannot take from his child its right of inheritance, though he may make the right valueless by a disposition of his property. The case of Hamilton v. Bedford, *supra*, is not based upon a state of facts altogether similar to the facts of this case. In that case Hamilton had released the custody and control of his infant son to a children's society, which was authorized by its charter to make a contract for the adoption of the child. The society made a contract with Bedford, by which the parental control of the child was given to him, and he adopted the child as his heir, but the society reserved the right to cancel the contract for failure to perform the conditions by Bedford. Bedford, by the proper proceedings in court, adopted the child as his heir, under the provisions of section 2071, *supra*. Thereafter, in a litigation between Hamilton, Bedford and the society, the circuit court adjudged the custody and parental control of the child to the society, as against both Hamilton and Bedford, and

set aside the decree of adoption of the child by Bedford. Upon appeal, this court sustained the judgment of the circuit court, to the extent that.it cancelled the contract for the parental control of the child between Bedford and the society and gave the parental control to the society, as against its father, but reversed the judgment of the circuit court, to the extent that it set aside the decree of adoption. The decree of adoption in that case did not award the parental control of the child to the adoptive father, as the decree did, in the case at bar, but in that case the contract of adoption with the society did give the parental control to Bedford, and it derived its authority to the parental control of the child from its father. The effect of the court's holding was that, under those circumstances, the right to inherit from the adoptive father was not necessarily connected with, nor did it depend upon the adoptive father's right to the parental control of the child.

For the reasons indicated, it appears that the appellee is an heir of Villier, and entitled to inherit from him as if she was his child. As such she is a distributee of his estate.

The judgment is therefore affirmed.