In re Estate of Mary Elizabeth Tilliski, Deceased. August Tilliski, Administrator of Estate of Mary Elizabeth Tilliski, Deceased et al., Appellants, v. Sarah A. Martin, Appellee.

Opinion filed June 20, 1944. Rehearing denied August 28, 1944.

Moses PULVERMAN, of Benton, for appellants.

FRANK E. TROBAUGH and STEPHEN E. BRONDOS, of West Frankfort, for appellee.

MR. JUSTICE BRISTOW delivered the opinion of the court.

Mary Elizabeth Tilliski, a resident of Franklin county, Illinois, died intestate August 6, 1940 leaving her surviving her husband, August Tilliski, a natural daughter, Sarah A. Martin, a sister Daisy Walton, and a niece, Sarah Kaesberg. On October 9, 1940, letters of administration were issued to August Tilliski. Sarah A. Martin, wife of I. J. Martin, was legally adopted by T. J. Armstrong and Sarah Armstrong in 1900 while a small child. The proceeding was effected

in the probate court of Williamson county, Illinois. The decree of adoption entered therein never was reversed or modified.

There was a hearing in the county court of Franklin county to determine the heirship of August Tilliski, at which time the attorneys for the administrator of decedent and Sarah A. Martin made and filed a stipulation of facts. The stipulation admitted (1) that Sarah A. Martin is the natural child of decedent; (2) that she was adopted by the Armstrongs in 1900; (3) the divorce of her parents and the later marriage of her mother to August Tilliski, and that the Tilliskis were divorced about 1925; (4) that the property left by decedent was her separate property awarded to her by the divorce decree; (5) that the Tilliskis were remarried and were husband and wife at the time of her decease; (6) that decedent left surviving her only the following persons claiming heirship: August Tilliski, husband; Sarah A. Martin, daughter; Daisy Walton, sister; and Sarah Kaesberg, niece; (7) that Sarah A. Martin received by will of T. J. Armstrong $200 and inherited $1,013.48 from the estate of Sarah Armstrong; (8) that the issue involved in the controversy is whether Sarah A. Martin, the natural child of Mary Elizabeth Tilliski, deceased, she being also the adopted child of T. J. Armstrong and Sarah Armstrong, is entitled to inherit a child's part from the estate of her natural mother.

A final order was entered in the county court on July 24, 1942, finding that Sarah A. Martin was not denied her right to inherit from her natural mother because of the fact that she had become the adopted child of the Armstrongs. Appeal from this order was taken to the circuit court of Franklin county, and upon a trial *de novo* the court, having for its consideration the same stipulation of facts, entered a finding sustaining the conclusion reached by the county court. From this order, this appeal is presented to this court.

The appellant contends that a decision of this case must turn wholly on the Descent Act of Illinois, which is article 16 of the Probate Act, and on the Adoption Act of Illinois as same were in effect at the time of the death of Mary Elizabeth Tilliski on August 6, 1940.

Prior to January 1, 1940, the old Administration Act of 1872 did not include the law of descent. The Descent Act of 1872 was set out in an entirely separate chapter. The statute on adoption of children of 1874 was prior to January 1, 1940, and still is a separate chapter. The new Probate Act which became effective July 1, 1940 expressly repealed the Administration Act of 1872, and the Descent Act of 1872 and sections 5, 6, and 7 of the Adoption Act were deleted and recast into the Descent Act embodied in the new Probate Act as section 14 of Article II.

The matter of descent of property is the prerogative of the legislature, and descent statutes may be changed by the legislature at any time before the right of inheritance has become fixed as a vested right in the heir by the death of the owner. *Wunderle v. Wunderle,* 144 Ill. 40; *Sayles v. Christie,* 187 Ill. 420.

It is the contention of the appellant that certain changes were made in the adoption and descent statutes which evidenced an intention on the part of the legislature to preclude an adopted child from inheriting from his or her natural parent. To analyze this contention, let us examine the changes relied upon. Section 3 of the Illinois Statute on adoption of children in force at the time of the death of Mrs. Tilliski, and still in force, expressly provides: ". . . that from the date of the decree (of adoption) the child shall, to all legal intents and purposes, be the child of the petitioner or petitioners . . . ." Section 8 of such adoption statute expressly provides: "The natural parents of a child so adopted shall be deprived, by the decree, of all legal rights as respects the child . . . ." Section 3 of the old Illinois statute on

adoption in force in 1900 when the appellee in this case was adopted, and continuing in force till the new Probate Act in 1940, contained exactly the same language as above quoted from section 3 of the new Probate Act. Section 5 of the old Adoption Act in force in 1900 at the time appellee herein was adopted and continuing in force till 1940 expressly provided: "A child so adopted shall be deemed, for the purpose of inheritance by such child, . . . and other legal consequences and incidents of the natural relation of parents and children, the child of the parents by adoption, the same as if he had been born to them in lawful wedlock . . . ." The only clause of the descent article directly involved is the first clause, which reads: "First, when there is a surviving spouse and also a descendant of the decedent: (a) to the surviving spouse one third . . . and (b) to the decedent's descendants per stirpes two thirds . . . ."

Appellant concedes that an adopted child under the above "First" can inherit as a descendant of an adopting parent. Appellee contends that the adopted child may inherit both from adoptive parent and natural parent. Section 165 of the Probate Act (1941 Ill. Rev. Stat., ch. 3, par. 165, sec. 14; Jones Ill. Stats. Ann. 110.261) expressly provides that the adopted child "is deemed a descendant of the adopting parent for purposes of inheritance, except, . . . An adopting parent . . . is deemed the parent of the adopted child for purposes of inheritance, . . . ." Our Illinois statute on descent and distribution (Probate Act, ch. 3, 1941 Ill. Rev. Stat., par. 162, sec. 11; Jones Ill. Stats. Ann. 110.258) does not mention a "child" or "children" as an heir, but the term exclusively used as "descendant" of the decedent.

Appellant urges that it is important to observe that under the new enactment the use of the words "child" and "children" was discontinued. The descent article

of the Probate Act deals with four different classes of children: section 11, thereof, the natural child; section 12, the illegitimate child; section 13, the posthumous child; and section 14, the adopted child, where it says the adopted child is a descendant of the adopting parent. The appellant further reasons that since the adoption statute has been in force for more than 66 years prior to the Probate Act of 1940 (and the descent statute for 68 years), that, under recognized canons of statutory construction, it must be assumed that the legislature advisedly used the word "descendant" in section 14 of the Descent Act relative to an adopted child so as to synchronize that term with the word "descent" as used in section 11 of the Descent Act. Quoting from the appellants' brief, that we may appreciate the reasoning contained there, based upon the foregoing indicated statutory changes: "It must also be assumed that the Legislature in designating by section 14 of the Descent Article of the Probate Act the adopting parent as 'the parent of the adopted child for purposes of inheritance' intended to say just exactly what they did say, and did not intend to say: one of the parents. Had the Legislature intended to provide that the adopted child should inherit not only from the adoptive parent, but also from the natural parent, it would have been very easy to say that in section 14 of the Descent Article. It is not for the courts to read into the statute that which is not there. When the Legislature uses the term 'the parent of the adopted child,' such term is to be given its ordinary meaning, and, in connection with the wording of the Adoption Act and the Descent Article, it is obvious that the Legislature not only intended, but specifically stated, that the adopted child for the purposes of inheritance shall have only one parent—the adoptive parent (or parents) and not the blood parent (or parents)." Might it not be pertinently observed at this point that had the legislature intended to bar a

dual inheritance on the part of an adopted child, it could have done so by saying so in simple, apt language and not leave the subject open to guess, speculation, and conjecture?

Since the word "descendant" has been used in place of "child" or "children," we can profitably discuss the authorities that had under consideration the fixed, definite legal meaning of that term. In the case of *Wyeth v. Crane*, 342 Ill. 545, the court at page 547 said: "The word 'descendant,' as defined in the standard dictionaries and by textwriters, means one who is descended lineally from another, to the remotest degree (Webster's Dict.; New Standard Dict.; Bouvier's Law Dict.; 2 Jarman on Wills (5th ed.) p. 103; 2 Redfield on Will (3rd ed.), p. 77; 1 Page on Wills (2d ed.), Sec. 904, p. 1511; Thompson on Const. of Wills, Sec. 186, p. 321). It is coextensive and synonymous with 'issue.' 1 Page on Wills (2d ed.), Sec. 904, p. 1151; 2 Jarman on Wills (5th ed.) p. 1006; *Bates v. Gillett*, 132 Ill. 287."

In appellants' ably and clearly written argument, he further emphasizes the fact that the statutory changes heretofore mentioned, were prepared by the legislature in order that the status of the adopted child may now comport with the modern viewpoint of adoption,—that after adoption, the natural parent and the adopted child are, as they should be, for inheritance purposes strangers to each other.

There is one case, namely, *Keegan v. Geraghty*, 101 Ill. 26, that is cited and relied upon by both parties. The appellants in citing the case say: "It can be read only as in effect holding that the adopted child can inherit only from one set of parents, only from the adoptive parents, and not from the blood parents." In view of the fact that this case seems so important in sustaining the cause of opposing counsel, we deem it helpful to quote rather fully from that citation. "The adoption of one person by another is the creation of

an artificial relation between people, and is taken from the Roman law, being unknown to the English law. But a majority of the States of the Union have enacted statutes of adoption. There is not uniformity in such statutes. In no two of them, perhaps, are the new rights and obligations precisely the same. Except Louisiana and Texas, Massachusetts seems to have been first of the States to enact a law of adoption. The first statute on the subject in the latter State was passed in 1851, some change in which was made by subsequent statutes there passed in 1860 and 1871. Wisconsin passed the law under which petitioner was adopted, in 1858, it being a re-enactment, substantially, of the Massachusetts law of 1851. Illinois passed her first law on this subject in 1867 (Laws 1867, p. 133) which remained in force until 1874, when the present law was enacted, which, as to the rights of the adopted child, seems to be taken directly from the Massachusetts acts of 1860 and 1871, its wording in such respect appearing to be identical with that of the Massachusetts acts. The Massachusetts act of 1871, and the present Illinois act, as to the rights of the adopted child, are substantially the same as the Wisconsin law, except that by the latter there is no exclusion of taking from the lineal or collateral kindred of the parents by right of representation. . . . Our statute of adoption provides that the child adopted shall be deemed, for the purpose of inheritance by such child, the child of the parents by adoption, etc. 'For the purpose of inheritance by such child,'—from whom? The statute does not say, but we say, from the adoptive parents. We think it must be so limited from the nature of the proceeding, the propriety of so doing, and from the absence of express words of further extent. The proceeding of adoption is one entirely between such parents and the child, at the instance, by the consent, and upon the petition of the parent or parents. The artificial relation from adoption is established between these parties, and the stat-

ute defines what shall be the duties and rights of the parties from this relation between them. As we construe the statute, as between the parties to the transaction the adopted child is deemed, for the purpose of inheritance from the adoptive parents, their child, the same as if he had been born to them in lawful wedlock. And when such an adoptive parent dies intestate, having had no children born to him in wedlock, it is reasonable and just that the property he leaves should go to a stranger to his blood, his adopted child. It would be a consequence of his own desire and request in the taking of the adoption proceeding. But another person, who has never been a party to any adoption proceeding, who has never desired or requested to have such artificial relation established as to himself, why should his property be subjected to such an unnatural course of descent? To have it turned away upon his death from blood relations, where it would be the natural desire to have property go, and pass into the hands of an alien in blood,—to produce such effect, it seems to us, the language of the statute should be most clear and unmistakable, leaving no room for any question whatever. We find in our statute of adoption no express language giving to the adopted child the right to inherit from any one else than the adoptive parents. By the statute the adopted child is to be deemed the same as if born in lawful wedlock, for the purpose of inheritance by such child, 'and the legal consequences and incidents of the natural relation of parents and children.' These last general words, we think, are to be qualified in like manner as the others remarked upon, by restriction to the parties to the adoption proceeding and the persons named in the statute. Surely, in this generality of language there can not be found given the important right to inherit from a person other than the adoptive parents. . . . We then find that our statute of adoption contains no provision on the subject of the rights of the children born in wed-

lock and adopted children, as between themselves,—
that no right is given to them to inherit from or
through each other. Hence, under our law, the pe-
titioner, for any right to inherit from Mary Gertrude
Keegan, the child of the adoptive parent, Michael R.
Keegan, must look to our statute of descent; and the
right, if any, must be found there alone. To inherit
under that statute she must be the sister of Mary
Gertrude Keegan. Petitioner is not such sister, nor
has she been made an adopted sister, and had given
to her the rights of a sister to Mary Gertrude Keegan.
An adopted child is not a child in fact, nor is an
adopted child, having the right of a child, a child in
fact. But under the statute of descent, to inherit from
Mary Gertrude Keegan, as her sister, petitioner must
have been the actual child of Michael R. Keegan—be-
ing his adopted child will not suffice.'' This case
simply holds that an adopted child cannot inherit from
its adoptive sister. The language employed that gives
false encouragement to appellant is ''the statute does
not give the adopted child the right to inherit from any
other than its adoptive parents.'' That sentence
plainly means that an adopted child cannot inherit
from any other member of the family of the adoptive
parents. That was the question under consideration.
The decision no place says that the statute takes away
any right the child has to inherit from its natural
parent. It merely says it cannot inherit from a foster
sister.

Another case relied upon strongly by appellant is
that of *Boosey v. Darling,* 173 Cal. 221, 159 Pac. 606.
The appellant claims ''the reasoning and conclusions
reached are much like those of the *Keegan v. Geraghty*
case, *supra.*'' In this case, the California court held
that an adopted child cannot inherit from its natural
parent, and quoting; ''Our statute does in effect pro-
vide, as we have seen, that he can no longer inherit
from his parents by blood, because, so far as they are

concerned he is no longer their child.'' Yet this same court held that such child could inherit from its grandparents, claiming that such relationship of adopted child and grandparent is not affected by the adoption statute. This seems to be the only case in the entire United States where a reviewing court had made such a pronouncement.

The adoption statute in California is slightly different from the one in Illinois. The California statute relieved the natural parent of all parental duties toward, and all responsibility for, the child so adopted: ''The parents of an adopted child are, from the time of the adoption, relieved of all parental duties towards, and all responsibility for, the child so adopted, and have no right over it.'' The Illinois statute does not do this. On the contrary, under the Illinois law the natural parent continues to be responsible for the adopted child. The Illinois court in the case of *McNemar v. McNemar,* 137 Ill. App. 504, at page 507, held the adoption statute left the rights of inheritance between the adopted child and his natural parent the same as though no adoption had taken place, and that the statute did not destroy or impair the relation that existed between the natural parent and child; also that the statute did not by its terms or implications attempt to relieve a natural parent from the duty he owes his child to care for and support him.

This court joins in the criticism of the holding in the *Darling* case, *supra,* which is found in *In re Estate of Roderick,* 158 Wash. 377, 291 Pac. 325, 80 A. L. R. 1398: ''While holding, *Boosey v. Darling,* 173 Cal. 221, 159 P. 606, that an adopted child could not inherit from its natural parents, the Supreme Court of California decided that an adopted child could inherit from its natural grandparents. Criticizing that opinion, the Supreme Court of South Dakota, in *Sorenson v. Churchill,* 51 S. D. 113, 212 N. W. 488, 489, held that an adopted child's right to inherit from its natural

parents was not divested by the adoption statute. The court said: 'Though the sections of our adoption statute above cited be similar to corresponding sections of the California Code, and though the California court has said *Boosey v. Darling,* 173 Cal. 221, 159 P. 606, on the strength of those statutes, "our statute does, in effect, provide . . . that he can no longer inherit from his parents by blood," with all deference to that court whose opinions have had such peculiar weight with us, we are reluctant to follow it in this instance; for, in that case, it held that, despite the above restriction upon inheritance, an adopted child could inherit from its natural grandparent through right of representation, as the child of his natural parent from whom he could not inherit. The Minnesota court, in *Roberts v. Roberts, supra,* while not attempting to analyze the varying adoption statutes of the various states, considered the California cases cited by appellant herein, but concluded that an adopted child does inherit from its natural parent, and cited a long list of cases in consonance therewith, among which we find many cited by respondent there. . . . Neither by express statute, nor by necessary implication, nor by prior decisions of this court, nor, indeed, by the express holding in a like case by any court, are we compelled to ignore the demands of that blood right on which the statutes of descent are based. In fact, a great array of authority, from Justinian to the recent Minnesota case above cited, convinces us that the laws of adoption do not so limit that part of Section 701, Rev. Code 1919, above quoted, as to cause a child, on being adopted, to lose its right to inherit from its natural parent. By our adoption statute a new relation of parent and child is created. Capacity to inherit from the adoptive parents is conferred upon the child, but there is no language in the statute purporting to deprive the adopted child of the right to inherit from its natural parents. We have no statute

preventing such dual inheritances, therefore, an adopted child may inherit from both adoptive and natural parents.' ' . . . It may be observed that there is no statute which prevents dual inheritance. While the adoption statute creates a new relation of parent and child, and confers new capacity to inherit, it does not purport to cut off capacity to inherit already enjoyed. Without such a statute, the authorities seem to agree that an adopted child may inherit from both its natural and its adopted parent.' *Dreyer v. Schrinck*, 105 Kan. 495, 185 P. 30, 33. Not losing by adoption the right which the statute of descent gave to appellant of inheriting from her natural father, that father died intestate as to appellant by reason of his failure to name or provide for her in his will.'' The general rule throughout the United States seems to be that an adopted child in a legal sense is the child of both its natural and its adopting parents, and is not because of the adoption, deprived of its rights of inheritance from its natural parents, unless the statute expressly so provides. Section 26, page 614, vol. 1, Ruling Case Law. Unless prohibited by statute, an adopted child may inherit both from its adoptive and natural parents, and in absence of a statute to the contrary, an adopted child may inherit both from its adoptive parent and from or through its natural parent. Section 129, page 1400, vol. 1, Corpus Juris.

In the case of *Hockaday v. Lynn*, 200 Mo. 456, 98 S. W. 585, you will find the following language: ''Our adoption statute grants to the adopted child the right to inherit from its adoptive parent, but does not divest that child of the right of inheritance from its natural parents. The statute is in derogation of the common law. It cannot be assumed, presumed or inferred that the appellant cannot inherit from her father, in the absence of a legislative declaration to that effect. . . . It may stand assumed as sound law that consanguinity is so fundamental in statutes of descents

and distributions that it may only be ignored by construction when courts are forced so to do, either by the terms of express statute or by inexorable implication."

In 80 A. L. R. page 1403 may be found numerous cases cited from United States, Indiana, Iowa, Kansas, Massachusetts, Michigan, Minnesota, Mississippi, Missouri, New York and South Dakota, where the general rule on the question under consideration is found to be, quoting "The general rule, sometimes embodied in express statutory provisions, is that the right of a child to inherit from its natural parent is not affected by the fact of its having been adopted by another."

In *Bartram v. Holcomb*, 109 Kan. 87, 198 Pac. 192, the court held: "a child who after the death of his mother, was adopted by his maternal grandfather, inherits from the grandfather on his death, as his adopted child, and inherits also as the child of its mother."

In 2 C. J. S., page 454, sec. 63 may be found a further discussion of the subject throwing more light on the sound reasons underlying the descent rule that no child should have his inheritance abridged because he has been adopted by another, quoting: "The adopted child continues to inherit from all blood relatives in the absence of a statute to the contrary, although he may be denied the right to inherit in a dual capacity where the adoptive parent is a blood relative.

"In the absence of a statute to the contrary, although the child inherits from the adoptive parent, he still inherits from or through his blood relatives, or his natural parents. In view of the tendency of the courts to construe adoption statutes so as to benefit the child, as pointed out above in section 6 of this title, and also, in view of the fact that a statute severing the relation between parent and child is in derogation of common law and should for that reason be strictly construed, it has been held that an adoption statute

providing that the natural parents shall be divested of all legal rights and obligations with respect to such child should not be construed so as to deprive the child of its right to inherit from or through its natural parents. Under such a statute it cannot be assumed that the adopted child cannot inherit from its natural parent unless there is an express legislative declaration to that effect. Where the statute is considered as having the effect of depriving him of the right to inherit from his natural parents he can still inherit from other blood relatives. It has been held that an adopted child may inherit from the same person in the dual capacity of a blood relative and an adopted child, although the right to take in a dual capacity has also been denied, in which case the child will inherit in the capacity which gives it the greater right."

In *Sorenson v. Churchill,* 51 S. D. 113, 212 N. W. 488, the court had the following to say on the subject: "The adopted child, the person principally affected by the transaction, has no choice and gives no consent. . . . No one consents for the innocent and helpless subject to the transfer that he shall lose the right to inherit from his natural parent, whose issue, under section 701, he does not cease to be when the right of his control passes to another."

In *Wagner v. Varner,* 50 Iowa 532, the court said: "Because of the adoption the child acquires certain additional rights, but there is nothing in the act of adoption, which in and of itself takes away other existing rights, or such as may subsequently accrue." Reaching the same conclusion the Kentucky court in the case of *Villier v. Watson,* 168 Ky. 631, said: " 'All the authorities agree that the fact of adoption does not lose the adopted child's right of inheritance from its parents.' "

In the case of *Humphries v. Davis,* 100 Ind. 274, the court employed this language in support of the general rule: "The rule which we adopt does not cut off the adoptive child from inheriting from its natural rela-

tives. It may inherit from them and also from its adoptive parents. This was the rule of civil law, Sanders Justinian 105.''

.Counsel for appellant finds no answer to the many authorities heretofore cited holding contrary to his contentions except to say that the statutes in those States were different, and that in many instances there was no descent and adoption statute involved. This does not seem to answer the general broad sweeping pronouncement that an adopted child will not lose its right to inherit from its natural parent UNLESS EXPRESSLY DENIED SUCH RIGHT BY STATUTE.

In view of the foregoing, it seems to us that the conclusion is irresistible that an adopted child, in a legal sense is both the child of its adopting parent and its natural parent. We reach this result not only because the overwhelming weight of authority in the United States points in that direction, but to hold otherwise would be extremely unjust and unnatural. Consanguinity cannot be ignored in placing a meaning upon our adoption and descent statutes. Only by express terms and clear language appearing in such statutes denying inheritance of a blood relative could we be persuaded to make such a decision. Appellants' counsel earnestly .contends that the changed language appearing in the 1940 enactments heretofore outlined, indicates a desire on the part of the legislature to confine the inheritance on the part of an adopted child to its foster parents. We deduce the contrary inference from the action taken by the legislature. They nowhere expressly said that an adopted child should lose its rights to inherit from a natural parent. And further there is no language in either the old or new enactments which gives support to any reasonable implication that they ever meant to destroy the dual inheritance of, an adopted child.

We are, therefore, of the opinion that the judgment of the circuit court should be affirmed.

*Affirmed.*