# IN THE MATTER OF THE ESTATE OF FLOYD IVAN HODGE, DECEASED

Probate No. 10/1989

Territorial Court of the Virgin Islands

Div. of St. Thomas and St. John

June 12, 1989

SORAYA DIASE, ESQ., St Thomas, V.I., *for the estate and administratrix*

FRED VIALET, ESQ., St. Thomas, V.I., *for Ivan Hodge, Eric Hodge and Judith Hodge*

JOYCE GLASON O'REILLY, ESQ., St. Croix, V.I., *guardian ad litem and guardian of the estate of Bryan Preston Williamson*[1]

CHRISTIAN, *Senior Sitting Judge*

## MEMORANDUM OPINION

The Court is called upon to decide whether the minor child of decedent, Bryan Preston Williamson (hereafter "Bryan"), by reason of his adoption by his stepfather, Lonnie Williamson (hereafter "the adopting parent") and his wife, the natural mother of Bryan, Susan Stacy Williamson, in the Circuit Court of the Eleventh Judicial Circuit in and for Dade County, Florida, Family Division, on October 29, 1979, loses his intestate inheritance from his natural parent, the decedent herein. For the reasons stated below, we answer this question in the affirmative.

---

[1] Bryan's surname was changed from "Hodge," that of his natural father, the decedent, to "Williamson," that of the adopting parent, by the "Final Judgement [sic] of Adoption," dated October 29, 1979. See Paragraph 2 thereof.

## II. *FACTUAL BACKGROUND*

Floyd Ivan Hodge died intestate in St. Thomas, Virgin Islands, on August 22, 1988. He was domiciled in this district at the time of his death. He left two children, namely: Chareen Hodge, born to him on March 20, 1971, and now residing in Downey, California; and Bryan Preston Williamson, born to him out of lawful wedlock on March 7, 1976, and now residing in St. Croix, Virgin Islands. Bryan is thirteen years of age and appears in this action by his duly appointed Guardian ad litem and Guardian of his estate, Joyce Glason O'Reilly, Esquire, as per Order of the Honorable Judge Maria M. Cabret of this Court, dated February 15, 1989.

Decedent died leaving real and personal property, all having their situs in St. Thomas, Virgin Islands, and having an estimated gross value at the time of death of $125,000.00 as per Verified Inventory filed by the administratrix on March 13, 1989.

In her Petition for an Order of Administration and Letters of Administration, dated January 12 and received by the Court on January 13, 1989, petitioner alleges in Paragraph 1 thereof that Chareen Hodge is "the only child of the deceased." She bases this assertion on the alleged facts that Bryan, the second child he naturally fathered, was adopted prior to his death; that decedent died intestate; and that decedent left no surviving spouse. Petitioner therefore prayed the Court to adjudge, pursuant to 15 V.I.C. § 84(1), that Chareen is decedent's sole heir at law and that therefore she be vested with decedent's entire net estate, as the sole distributee and owner thereof.

But both Attorneys Vialet and O'Reilly, appearing on behalf of Bryan, contend that Bryan did not lose his right to inherit as a blood relative from his natural father's estate since he died intestate; that to lose this right, just as it took a clear and unambiguous statutory enactment to create it, it also required a clear and unambiguous statutory enactment to abrogate it. They further contend that to abrogate the right of inheritance once created it is even more imperative that reliance be on a clear and unambiguous statute as adoptions were unknown to the common law, the Virgin Islands is a common law jurisdiction, and any such enactment would have to be strictly construed. They further contend that since the action advocated by petitioner amounts to a forfeiture of proprietary rights, such clear and unequivocal expression of the Legislature is all the more imperative to cause Bryan, a descending lineal blood relative of decedent, admittedly

the highest class of intestate succession created by the laws of descent and distribution, in virtually all common law jurisdictions, to lose his inheritance. They further contend that not only is there no enactment meeting the aforesaid high standard, but there is no such enactment of any type. These attorneys for Bryan therefore move the Court, notwithstanding Bryan's adoption, and the new inheritance to which this entitles him as an adopted child, that he be permitted to also be granted the inheritance to which he is entitled as an heir of decedent, his natural parent. They contend that, based on applicable law existing at the time of death, Bryan is entitled to both inheritances—as an intestate heir of his natural parent, and as the child of his adoptive parent(s). The issue mentioned in the introduction of this opinion for the Court to decide was thus joined.

One other fact. The Memoranda of Law filed by Attorneys Diase and Vialet, who are the only ones filing, were premised on the mistaken belief that Bryan was adopted in the Virgin Islands, and thus the adoption law of the Virgin Islands applied to all issued relating to the adoption—whether it in fact took place, and its effect on the inheritance rights of the interested parties in estates where decedents died intestate. It was later learned that the adoption took place in Florida, and therefore Florida law in effect at the time of the adoption was controlling.

### III. DISCUSSION

We begin this discussion by stating that we have made what we consider to be a thorough search of the cases decided in this jurisdiction with the result that we must agree with the attorneys who filed briefs, that this is a case of first impression in this jurisdiction.

Adoption as such was unknown to the common law. Therefore, to make and apply the correct decision with respect to the aforesaid issue, resort must be had to the applicable adoption law of the forum where the adoption took place to determine the legality of the alleged change of status of the person to be adopted, and the effects thereof, as well as the laws of intestate succession applicable to the case.

> The right of adoption, while known to the ancients of Greece and Rome, and probably to other ancient peoples, and while practiced among many of the continental nations under the civil law from the remotest antiquity, was unknown to the

213

common law of England, and exists in this country in those jurisdictions having that law as the basis of their jurisprudence, only by virtue of statute. 1 Am. Jur., Section 3; 2 Am. Jur. 2d, Section 2; 97 ALR 1015, In re Wheatley's Estate, 174 F. Supp. 868 (DCVI, July 31, 1959).

■ In this country, the right or power to create, by legal proceedings, the relationship of parent and child between persons not so related by nature, exists only by virtue of a statutory provision prescribing the conditions and the procedure by which adoption may be made effective. 2 Am. Jur. 2d § 2; Meeks v. Cornelius, 244 Ala. 532, 14 So.2d 145 (1943); Re Taggart, 190 Cal. 493, 213 P. 504 (1923), 27 A.L.R. 1360; Russell v. Jordan, 58 Colo. 445, 147 P. 693 (1915); Re Adoption of a Minor, 79 App. D.C. 191, 144 F.2d 644 (1944), 156 A.L.R. 1000; Re Palmer, 129 Fla. 630, 176 So. 537 (1937); Villier v. Watson, 168 Ky. 631, 182 S.W. 869 (1916); Spencer v. Franks, 173 Md. 73, 195 A. 306 (1937), 114 A.L.R. 263; Ross v. Ross, 129 Mass. 243; Brown v. Blesch, 270 Mich. 576, 259 N.W. 331 (1935), 97 A.L.R. 1012; Eggleston v. Landrum, 210 Miss. 645, 50 So.2d 364 (1951), 23 A.L.R.2d 696; Menees v. Cowgill, 359 Mo. 697, 223 S.W.2d 412 (1949), cert. den., 338 U.S. 949, 94 L.Ed. 585, 70 S. Ct. 488; Re Jackson, 55 Nev. 174, 23 P.2d 125 (1933), 91 A.L.R. 1381; Betz v. Horr, 276 N.Y. 83, 11 N.E.2d 548 (1937), 114 A.L.R. 491; Wilson v. Anderson, 232 N.C. 212, 521, 59 S.E.2d 836, 61 S.E.2d 447 (1950), 18 A.L.R.2d 951; Re Frazier, 180 Or. 232, 177 P.2d 254 (1947), 170 A.L.R. 729; Helms v. Elliott, 89 Tenn. 446, 14 S.W. 930 (1890); Re Walworth, 85 Vt. 322, 82 A.7 (1912); Shepherd v. Sovereign Camp, W. W., 166 Va. 488, 186 S.E. 113 (1936); Wall v. McEnnery, 105 Wash. 445, 178 P. 631 (1919).

Not only the right of adoption but the legal consequences of adoption are of statutory origin. 2 Am. Jur. 2d § 2. See also Re Holibaugh, 18 N.J. 229, 113 A.2d 654 (1955), 52 A.L.R.2d 1222.

■ Such statutes being in derogation of the common law should be strictly construed. 2 Am. Jur. 2d § 6; Re Jessup's Estate, 81 Cal. 408, 21 P. 976, 22 P. 742, 1028 (1889); Ryan v. Foreman, 262 Ill. 175, 104 N.E. 189 (1914); Watts v. Dull, 184 Ill. 86, 56 N.E. 303 (1900); Emmons v. Dinelli, 235 Ind. 249, 133 N.E.2d 56 (1956); Seibert v. Seibert, 170 Iowa 561, 153 N.W. 160 (1915); Hockaday v. Lynn, 200 Mo. 456, 98 S.W. 585 (1906); Re Howard, 125 Okla. 86, 256 P. 54 (1926); Re Meyers' Estate, 197 Or. 520, 254 P.2d 227 (1953); Re Frazier, 180 Or. 232, 177 P.2d 254 (1947), 170 A.L.R. 729; Delamotte v. Stout, 340 S.W.2d 894 (Tenn 1960); Re Roderick,

158 Wash. 377, 291 P. 325 (1830), 80 A.L.R. 1398; Lacher v. Venus, 177 Wis. 558, 188 N.W. 613 (1922), 24 A.L.R. 403.

> Since the power of the court in adoption proceedings to deprive a parent of his child is in derogation of his natural right to it, and is a special power conferred by the statute, such statute must be strictly construed. Re Cozza, 163 Cal. 514, 126 P. 161.

Adoption statutes obviously are not intended to supplement the common law but to make a complete change in it. Seibert v. Seibert, supra; Re Havsgord, 34 S.D. 131, 147 N.W. 378 (1914), 16 A.L.R. 1024.

■ Such legislation is intended to give to adopted children the same relation to adoptive parents that was given them by the civil law, that is, to make their legal status the same as that of a natural child. 2 Am. Jur. 2d § 6. See also Markover v. Krauss, 132 Ind. 294; 31 N.E. 1047 (1892).

■ Consanguinity is fundamental in statutes of descent and distribution, and the right of a child to inherit from his natural parents or to share in the intestate personalty of their estates is affected by the legal adoption of the child by another only to the extent that such rights are taken away or limited by the terms of the applicable statutes of adoption and descent and distribution or by necessary implication therefrom. Glanding v. Industrial Trust Co., 29 Del. Ch. 517, 46 A.2d 881 (1942); Re Tilliski, 390 Ill. 273, 61 N.E.2d 24 (1945); Mississippi Valley Trust Co. v. Palms, 360 Mo. 610, 229 S.W.2d 675 (1950); Re Kay's Estate, 127 Mont. 172, 260 P.2d 391 (1953); Sorenson v. Churchill, 51 S.D. 113, 212 N.W. 488 (1927); Re Benner's Estate, 109 Utah 172, 166 P.2d 257 (1946). Annotation: 37 A.L.R.2d 334, 336, §§ 1, 2. [Underscoring ours.]

To state the rule another way, an adopted child is, in a legal sense, the child both of its natural and of its adopting parent(s), and is not, because of the adoption, deprived of its right of inheritance from its natural parents, unless the statute expressly so provides. Burnes v. Burnes, 137 F. 781, cert. den., 199 U.S. 605, 50 L.Ed 330, 26 S. Ct. 746 (1905); Shaver v. Nash, 29 S.W.2d 298, (Ark 1930), 73 A.L.R. 961 (involving Texas law); Re Pillsbury, 175 Cal. 454, 166 P. 11 (1917), 3 A.L.R. 1396; Re Wilson's Estate, 95 Colo. 159, 33 P.2d 969 (1934); Slattery v. Hartford-Connecticut Trust Co., 115 Conn. 163, 161 A. 79 (1932); Re Tilliski, 323 Ill. App. 490, 56 N.E.2d 481 (1944), aff'd, 390 Ill. 273, 61 N.E.2d 24; Humphries v. Davis, 100 Ind. 274; Villier v. Watson, 168 Ky. 631,

215

182 S.W. 869 (1916); Delano v. Bruerton, 148 Mass. 619, 20 N.E. 308 (1889); Re Klapp, 197 Mich. 615, 164 N.W. 381 (1917); Roberts v. Roberts, 160 Minn. 140, 199 N.W. 581 (1924); Clarkson v. Hatton, 143 Mo. 47, 44 S.W. 761 (1898); Re Kay's Estate, 127 Mont. 172, 260 P.2d 391 (1953); Coonradt v. Sailors, 186 Tenn. 294, 209 S.W.2d 859 (1948), 2 A.L.R.2d 880; Re Roderick, 158 Wash. 377, 291 P. 325 (1930), 80 A.L.R. 1398. Annotation: 37 A.L.R.2d 334 et seq., §§ 1, 2. [Underscoring ours.]

The fact that by the terms of the adoption statutes, the natural parents lose all rights over a child when it is adopted by another does not necessarily imply that the child may not inherit from such parents. Re Benner's Estate, 109 Utah 172, 166 P.2d 257 (1946). Nor is that implication to be drawn from the fact that the child becomes the legal child of its adopting parents and sustains all the rights, and is subject to all of the duties, of that relationship. Sears v. Minchew, 212 Ga. 417, 93 S.W.2d 746 (1936); Re Benner's Estate, supra.

A statute which includes as its dominant and principal feature the establishing of the adopted child as the heir of the adopting parent, without reference to inheritance from natural parents, is not likely to be construed as depriving the child of that inheritance. Shaver v. Nash, (Ark.) 29 S.W.2d 298 (1930), 73 A.L.R. 961.

■ Rights of dual inheritance from the natural parent as well as from the adoptive parent are denied by a statutory declaration that all rights and duties between adopted child and his natural parent shall cease and determine; and that the child shall thereafter be deemed and held to be for every purpose the child of the adoptive parents. 2 Am. Jur. 2d § 103. Wailes v. Curators of Cent. College, 363 Mo. 932, 254 S.W. 2d 645 (1953), 37 A.L.R.2d 326. [Underscoring ours.]

■■ It seems to be well settled that the status of the adopted person is determined by the law of the forum of the adoption proceedings, unless the status so created or the rights flowing from the status are repugnant to the public policy of another state in which they are sought to be enforced. Commonwealth v. Kirk, 212 Ky. 646, 279 S.W. 1091 (1926), 44 A.L.R. 816; Pyle v. Fischer, 278 Ky. 287, 128 S.W.2d 726 (1939); Restatement, Conflict of Laws, § 142; 2 Am. Jur. 2d Adoption § 12. But the rights of inheritance of the adopted child are generally governed by the law of the state in which the property is situated, if real property, or the domicle of the decedent if personal. This principle is thus phrased in 2 Am.

216

Jur. 2d Adoption § 12, p. 870: "However, the extraterritorial effect of a foreign adoption decree is limited by the principle that the descent of real property is to be governed by the law of the situs of the property, and the descent of personal property by the law of the domicile of the decedent." The problem is dealt with in greater depth in 2 Am. Jur. 2d Adoption §§ 114, 115.

We come now to the application of the principles above expressed to the facts of this case. Since the adoption of Bryan took place in Florida, we must examine the terms of the Florida adoption statute in effect on the date of the adoption, October 29, 1979, to see if it in fact leaves the intestate inheritance of Bryan from his natural parent, the decedent, intact, modifies it, or abrogates it.

But first let us see how the Judgment of Adoption reads so that the terms of the applicable statute may be viewed in proper perspective, having in mind precisely what the Court adjudicated as to both change in parent-child relationship and inheritance by the child from both decedent, its natural parent, and its new adopting parent. We quote the contents of the Judgment ad verbum:

"IN THE CIRCUIT COURT OF THE ELEVENTH JUDICIAL CIRCUIT IN AND FOR DADE COUNTY, FLORIDA

FAMILY DIVISION

IN RE: The Matter of the ADOPTION of:

CASE NO: 79-7093 (4)

BRYAN PRESTON HODGE by LONNIE WILLIAMSON, Petitioner,

FINAL JUDGEMENT [sic] OF ADOPTION

THIS CAUSE coming on to be heard upon the verified PETITION FOR ADOPTION filed herein, and the consent of the natural mother, the Petitioner, LONNIE WILLIAMSON, is fit and proper to adopt the minor child, BRYAN PRESTON HODGE sought to be adopted, and that the best interest of the minor child will be promoted by the adoption of that said child who is suitable for adoption by the Petitioner, and being otherwise advised fully advised in the premises, it is:

217

ORDERED AND ADJUDGED that the minor child known as BRYAN PRES-TON HODGE is hereby declared to be the legal child of the Petitioner, LONNIE WILLIAMSON and his wife, the natural mother of the child, SUSAN Stacy WILLIAMSON, and is hereby given the name BRYAN PRESTON WILLIAMSON, by which name he shall hereafter be known, and it is

FURTHER ORDERED AND ADJUDGED that said child shall be the child and legal heirs [sic] of the Petitioner, LONNIE WILLIAMSON and his wife, SUSAN Stacy WILLIAMSON, entitled to the rights and privile-es [sic], and subject to all obligations of children born to said Petitioner in lawful wedlock.

DONE AND ORDERED in Chambers at Miami, Dade County, Florida, this 29 day of October, 1979.

/s/ Ralph B. Ferguson Jr.
CIRCUIT JUDGE

State of Florida)
County of Dade)
This Copy is a true Copy of the
Original on file in this Office.
WITNESS my hand and Official Seal,
this 29 day of October, A.D., 1979
    Richard P. Brinker
    Clerk Circuit Court

By: /s/ Lita V. Malone D.C."

Section 63.172 of Chapter 63 of the applicable Florida adoption statute reads thus:

63.172. EFFECT OF JUDGMENT OF ADOPTION:

(1) A judgment of adoption, whether entered by a court of this state, another state, or of any other place, has the following effect:

(a) It relieves the natural parents of the adopted person, except a natural parent who is a petitioner or who is married to a petitioner, of all parental rights and responsibilities.

(b) It terminates all legal relationships between the adopted person and his relatives, including his natural parents, except a natural parent who is a petitioner or who is married to a petitioner, so that the adopted person thereafter is a stranger to his former relatives for all purposes, including inheritance and the interpretation or construction of documents, statutes, and instruments, whether executed before or after entry of the adoption judgment, that do not expressly

218

include the adopted person by name or by some designation not based on a parent and child or blood relationship.

(c) It creates the relationship between the adopted person and the petitioner and all relatives of the petitioner that would have existed if the adopted person were a legitimate blood descendant of the petitioner. This relationship shall be created for all purposes, including inheritance and applicability of statutes, documents, and instruments, whether executed before or after entry of the adoption judgment, that do not expressly exclude an adopted person from their operation or effect.

(2) If a parent of a child dies without the relationship of parent and child having been previously terminated and a spouse of the living parent thereafter adopts the child, the child's right of inheritance from or through the deceased parent is unaffected by the adoption.

Subdivision (1)(a) of this section is applicable to this case as the natural parent, decedent, was neither the petitioner for adoption nor married to a petitioner for adoption of Bryan at any time. Therefore, the Effect of the Judgment of Adoption, pursuant to the statute, was to relieve decedent of all parental rights and responsibilities to his son Bryan and to transfer these rights and responsibilities to the adopting parents. (See Wailes v. Curator of Cent. College, supra.)

Subdivision (1)(b) of the statute is applicable to this lawsuit as the natural parent, decedent, the descent and distribution of whose estate is in question here, falls into neither of the stated exceptions from the applicability of its provision, that is, decedent was neither a natural parent who was a petitioner [for adoption] nor a natural parent who was married to a petitioner [in the adoption proceeding]. Therefore, reading this subsection without the inapplicable exceptions, the statute provides that the effect of the judgment of adoption is that "it terminates all legal relationships between the adopted person [Bryan] and his relative(s), including his natural parent(s), so that the adopted person [Bryan] thereafter is a stranger to his former relatives for all purposes, including inheritance and the interpretation or construction of documents, statutes, and instruments, whether executed before or after entry of the adoption judgment that do not expressly include the adopted person by name or by some designation not based on a parent and child or blood relationship." [Underscoring ours.] Here we have no

219

such instruments which expressly include Bryan by name or by some designation which is not based on a parent-child or blood relationship. Therefore the statute, as a result of the adoption, entirely abrogates the right of Bryan to inherit from decedent, his natural parent.

The Legislature having abrogated the child-parent relationship of decedent and Bryan for all purposes, including that of inheritance moving in either direction, descending or ascending, in subsection (1)(b) of the adoption statute, then proceeds in subsection (1)(c) thereof to state that it creates that same parent-child relationship between "the adopted person and the petitioner and all relatives of the petitioner that would have existed if the adopted person were a legitimate blood descendant of the petitioner ... for all purposes, including inheritance ...."

Reading the statute as an integrated single instrument, what it takes away with one hand, the heirship of Bryan to his natural parent, decedent, as a result of the adoption judgment, in subsection (1)(b) it turns right around and creates a substitute therefor in subsection (1)(c) of the statute. Bryan now is in the family of his adoptive parent everything he was in the family of his natural parent. We hold therefore that he does not enjoy both statuses. The effect of the adoption under this statute clearly is not to create an additional heirship or a new source of inheritance so that the adopted person may legally claim intestate succession or right of descent and distribution from both his natural parent(s) and his adoptive parent(s). The controlling authority here as to the status of the adopted person, as can be gleaned from all the authorities we have cited above, is the statute in force and effect in the jurisdiction where the adoption took place, and that authority clearly says no such right, the right of inheritance from both sources, exists, but rather the taking effect of the one abrogates the other, is in substitution, but not in duplication, thereof.

■ If there is any doubt left as to the intent of the Legislature being according to our construction of the statute, that subdivision (1)(b) of the statute means that the right of the adopted child to inherit from his natural parent(s) is abrogated upon his adoption; and by subdivision (1)(c), the right of the adopted child to inherit from his adopting parents, is created and granted the adopted child in its stead, any such doubt should be dispelled, completely removed, by a careful reading of subdivision (2) of the section. That subsection, as if to shed more light on the subject and facilitate the

220

correct construction to be given subdivisions (1)(b) and (1)(c), clearly states when the right of an adopted child to inherit from its natural parents is not abrogated or in any way adversely affected by the adoption—when the adopted child may inherit from the intestate estates of both its natural and its adoptive parents, as is advocated here by the Attorneys for the adopted child, Bryan. "If a parent of a child dies without the relationship of parent and child having been previously terminated [as of the time of death, there had been no adoption of the child], and a spouse of the living parent thereafter adopts the child, the child's right of inheritance from or through the deceased [natural] parent is unaffected by the adoption." [Underscoring ours.] In such cases only may the adopted child "double dip," as it were—be entitled to both the inheritance from its natural parent(s) and its adoptive parent(s) as well. The cardinal principle of statutory construction, inclusio unius est exclusio alterius, 11 Coke, 58b; Burgin v. Forbes, 293 Ky. 456, 169 S.W.2d 321, 325; Government of the Virgin Islands, Plaintiff v. Jose Lima, Sr., Defendant, (D.C.V.I., Criminal No. 83-84) (1986); Pfister v. Pfister, (T.C.V.I., Family No D47/1982) (1987), clearly applies here.

## IV. CONCLUSION

■ As the applicable statute, in clear and unambiguous terms, not once, but in effect twice,[2] states when an adopted child may inherit from the intestate estate of its natural parent and when it may not; and as Bryan does not fall within the class that may so inherit, we hold that Bryan may not inherit from the estate of decedent, as an intestate heir at law. Under the applicable law, he did not have the status of heir at law of decedent on the date of death of decedent.

■ Obviously, since all the property, real and personal, left by decedent, has its situs in this district, and decedent was domiciled in the district at the time of death, local law will govern its descent and distribution. See Commonwealth v. Kirk, Pyle v. Fischer, and Restatement, Conflict of Laws, § 142, supra.

---

[2] We construe subsections (1)(b) and (1)(c) in pari materia as being sufficient to support our position, and we construe subsection (2) thereof to clearly declare the applicable rule, only in different terms, establishing a good basis for comparison and clarity.